Fred GALINDO, Appellant,

v.

The STATE of Texas, Appellee.

No. 1022.

Court of Civil Appeals of Texas,
Corpus Christi.

April 8, 1976.

Rehearing Denied April 29, 1976.

Lee Arnett, Brownsville, for appellant.
Davis Grant, Austin, for appellee.

## OPINION

NYE, Chief Justice.

This is a disbarment action. The State of Texas, acting through the Grievance Committee for District 12–B, instituted this disbarment suit against Fred Galindo in the District Court of Cameron County. The case was tried to a jury. Based on the findings of the jury, the trial court entered its order suspending Galindo for the period of one year. The defendant has appealed from the trial court's judgment.

This disbarment suit was tried to a jury which found that the defendant had engaged in professional misconduct by misapplying and commingling funds belonging to a client and by misstating facts under oath to the Grievance Committee.

The jury found that the defendant received the money belonging to the doctor and the hospital and misapplied the sum willfully; that the defendant commingled the funds belonging to the client with his own private funds and that such was done willfully and without the knowledge and consent of the client. The jury further found that the defendant misstated facts to the Grievance Committee concerning funds belonging to him delivered in trust; that the defendant was under oath at the time that such misstatements were made and that such constituted dishonorable conduct.

Defendant has perfected his appeal in this cause and presents to us twenty-five points of error. These points will be grouped under two main headings, those being the Claire Count and the Count alleging misstatements made by defendant.

Defendant first asserts that the trial court lacked jurisdiction over this cause because no "complaint" was filed with the Grievance Committee in conformity with Section 7, Article XII, State Bar Rules in connection with any count of misconduct alleged in the formal complaint filed in court, and the absence of such a complaint the defendant was denied due process of law.

Defendant raises two questions, namely: 1) is a written complaint a prerequisite to the Grievance Committee's initiating their investigation and in filing a formal complaint; and 2) was defendant's procedural due process rights violated by the absence of such complaint.

In 1939, the Legislature enacted the State Bar Act, Article 320a–1, Tex.Rev.Civ. Stat.Ann., which had for its purpose the regulation of the practice of law. The act was designed to protect the public by eliminating from the legal profession those attorneys morally unfit to enjoy its privileges. *Phagan v. State,* 509 S.W.2d 703 (Tex.Civ. App.—Fort Worth 1974, writ ref'd n. r. e.); *State v. Dancer,* 391 S.W.2d 504 (Tex.Civ. App.—Corpus Christi 1965, writ ref'd n. r. e.); *Hexter Title & Abstract Co. v. Grievance Committee, Fifth Congressional Dist., State Bar of Texas,* 179 S.W.2d 946 (Tex. Sup.1944). When misconduct on the part of an attorney is alleged to have occurred, the Grievance Committee has the task to conduct an investigation. The Grievance Committee is an administrative agency of the judicial branch of our government. It functions as an arm of the Supreme Court in the discharge of its professional policing duties. *State v. Sewell,* 487 S.W.2d 716 (Tex.Sup.1972). Before a determination as to whether a written complaint is mandatory under the State Bar Rules, Art. XII § 7–16 (1973), these rules must be reviewed.

Section 7 (of the State Bar Rules) distinguishes a "complaint" from a "Formal Complaint". The term "complaint" shall embrace all complaints brought before a Grievance Committee, whether verbally or in writing. A "Formal Complaint" is the pleading by which disciplinary action is instituted by a Grievance Committee in a District Court.

Section 10 provides that no member shall be reprimanded, suspended, or disbarred for misconduct occurring more than four years prior to the time of filing of a complaint with the Grievance Committee. Section 10 further provides "that the complaint shall be considered as filed when made in writing to the Committee or any member thereof."

Section 11 entitled "Filing of Complaints" states that it shall be the duty of each

District Grievance Committee and its members to receive complaints of professional misconduct, alleged to have been committed by an attorney. Section 11 further provides that each Committee member shall report to his committee any case of professional misconduct which shall come or be brought to his attention and that the committee may, in any case, require a sworn statement setting forth the matter complained of as a condition to taking further action.

Section 12 provides that the Committee shall make such investigations of each complaint as it may deem appropriate and where the complaint appears to be of such nature as it will not call for disciplinary action and can probably be dismissed without the necessity of hearing the accused attorney, the Committee need not notify him of the filing of the complaint.

At the conclusion of its investigation, the Committee shall take such action on the complaint in one of the ways provided by Section 16. If the Committee is of the opinion that no disciplinary action is warranted, it shall dismiss the complaint and notify the complainant and the accused attorney. In a case where the accused has had notice of the complaint and an opportunity to be heard, and the Committee decides that the attorney should be reprimanded, such reprimand shall be reduced to writing and delivered to the attorney personally or by mail. In this regard, if the attorney accepts such reprimand, the reprimand becomes final and a copy thereof, together with a copy of the complaint, shall be mailed to the Clerk of the Supreme Court and Secretary of the State Bar. If, after such investigation, the Committee should be of the opinion that the license of the accused should be revoked or suspended for a period not to exceed three years, and if the Committee shall have reason to believe that the accused will accept its action as final, the Committee shall prepare a form of judgment and submit the same to the attorney. If the attorney agrees to the action of the Committee, copies of the judgment, together with copies of the complaint shall be mailed to the Secretary of the State Bar,

Clerk of the Supreme Court, and the Clerk of the District Court. If the attorney does not agree to such judgment, the Committee shall direct procedure by "formal complaint" in the district court.

 The above rules must be construed in such a way, as not only to vest in the various Grievance Committees the proper authority to carry out the purpose of the rules, but such rules must also be construed so as to protect the members of the legal profession against unwarranted prosecution, harassment or other abuses of power. The Legislature clearly intended that in a case where the Grievance Committee was of the opinion that action against the attorney was warranted (other than dismissal of the complaint), the attorney should have adequate written notice of the complaint and a reasonable opportunity to defend himself before the Committee. This reasonable opportunity to defend himself before the Committee upon grievances against the attorney is procedural due process. Notice must be given to the attorney of charges made and an opportunity afforded him for explanation and defense. At this early stage, the complaint can be made orally to the Committee and the notice to the attorney can be informal. However, the better rule would be that after a complaint has been received verbally by the Grievance Committee from a complaining witness or from a member thereof, the complaint should then be reduced to writing so that the accused can become fully aware of the extent of the charges. This procedure would find harmony in the rules that require copies of the complaints to be mailed to the Secretary of the State Bar and the Clerk of the Supreme Court.

The Grievance Committee admitted that no written complaint as such, had ever been filed. Therefore, it is clear that the Grievance Committee did not comply with the State Bar Rules in its failure to reduce to writing those allegations asserted against the defendant. In absence of such a complaint, the question still remains as to whether this failure denied defendant his right of procedural due process.

■ Many controversies have raged about the cryptic and abstract words of the Due Process Clause but there can be no doubt that at a minimum they require that deprivation of life, liberty or property by adjudication, be preceded by notice and opportunity for hearing, appropriate to the nature of the case. *In re Armstrong's Adoption*, 394 S.W.2d 552 (Tex.Civ.App.—El Paso 1965, no writ).

■ An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice, reasonably calculated under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. *Armstrong v. Manzo*, 380 U. S. 545, 85 S.Ct. 1187, 14 L.Ed.2d 62 (and cases cited therein); *H___ P. F___ v. B___ D___ P___*, 479 S.W.2d 124 (Tex.Civ.App.—San Antonio 1971, writ ref'd n. r. e.). In this connection, the defendant testified that he received a telephone call to appear before the Committee. He testified concerning such notice as follows:

"Q Now, on both of those occasions (July 20, 1973 and February 15, 1973 meetings), isn't it true that you were fully aware of the nature of the interrogation that was going to take place in that meeting, the interrogation of you, and you were prepared to testify concerning the Concepcion Claire matter on both occasions?

A Yes, I think so."

The Honorable Gary R. Gurwitz, a distinguished member of the Grievance Committee, testified that the defendant was apprised of the nature of the complaint about which he was going to be interrogated on that occasion (July 20, 1973). Although it appears that defendant did not receive actual written notice in the form of written complaint, the record shows that he had been fully apprised of the charges and was fully prepared to testify in his defense. In fact, he brought his former clients as witnesses to the first meeting (July 20, 1973). It, therefore, appears that the defendant received notice reasonably calculated, under all circumstances, to apprise him of the charges and afford him an opportunity to present his objections.

■ The other fundamental requirement of due process is "the opportunity to be heard". *Grannis v. Ordean*, 234 U.S. 385, 394, 34 S.Ct. 779, 783, 58 L.Ed. 1363; *Armstrong v. Manzo*, supra. It is an opportunity which must be granted at a meaningful time and in a meaningful manner. The defendant makes no complaint as to this requirement, in that two hearings were conducted (July 20, 1973 and February 15, 1973) with defendant having the opportunity at each to present evidence witnesses in his defense. This Court finds no substance to the claim that defendant was denied procedural due process in the hearing before the Grievance Committee. Defendant had adequate knowledge of what acts he was accused of committing. Further, it is clear that the charges were brought against defendant by the Grievance Committee itself and no one other than the Grievance Committee had accused defendant of any professional misconduct. We take note that the Grievance Committee's proceedings do not accord finality in that such action taken by the Committee, whether it be a recommendation of a reprimand, suspension, or disbarment, can always be brought before a district court for a final determination of the merits of the complaints. See *State v. Sewell*, 487 S.W.2d 716 (Tex.Sup. 1972). Although we believe that the Grievance Committees in the future should file written complaints and serve the same on the attorneys that are to appear before their Committee, we hold that the claim of denial of due process as to this defendant is without merit in this case. Defendant's points of error 1 and 2 are overruled.

■ The defendant in his points of error numbers 3, 4 and 5 asserts that the trial court lacked jurisdiction because the Grievance Committee did not act in conformity with Section 16(d) of the State Bar Rules and such failure denied the defendant his rights of due process. More specifically, he asserts that there was no evidence that the Committee, acting as a Committee, autho-

rized the Honorable Morgan K. Talbot or any other person or group to file the formal complaint in the district court.

Section 16 of the State Bar Rules authorizes the Grievance Committee, after its investigation, to ". . . direct procedure by Formal Complaint as hereinafter set forth." The action by formal complaint is taken when the accused attorney will not accept the Committee's recommendations of a reprimand, suspension or revocation of the attorney's license. Section 23 of the Rules provides that the Committee may appoint counsel for the prosecution of disciplinary action. There is no requirement that the Committee (as a whole) draft the Formal Complaint, but only that the Committee shall direct procedures by Formal Complaint.

According to the Grievance Committee's minutes of the meeting held May 30, 1973, it was decided that defendant should be suspended, although the length of such suspension was to be determined at a later date. It was agreed that the Chairman of the Committee, the Honorable Morgan K. Talbot, should contact the defendant and advise him of the decision of the Committee (suspension) and determine whether defendant would be agreeable to such a suspension. The minutes further reflect that if the defendant would not agree to any suspension, such fact was to be reported to the Committee and the matter would be turned over to the prosecuting committee. In the present case, Chairman Talbot advised the defendant of the Committee's decision whereby defendant refused to accept a suspension. Chairman Talbot testified that when he determined that the defendant would not accept the suspension, he (Talbot) was simply told to go ahead and proceed. We hold that the Grievance Committee did direct procedure by formal complaint in conformity with Section 16(d) and the defendant was not denied due process of law. Points of error Numbers 3, 4 and 5 are overruled.

■ Defendant in his points of error No. 8 and 9 asserts that the misconduct alleged in counts one and two are barred by the provision of Section 10, State Bar Rules. Section 10, the Limitation Section, reads in part as follows:

". . . no member shall be reprimanded, suspended, or disbarred for misconduct *occurring more than four years prior to the time of filing of a complaint with the Grievance Committee* ; . . . The complaint shall be considered as filed when made in writing to the Committee or any member thereof." (Emphasis added.)

It appears that a complaint may be filed in one of two ways. Section 7, State Bar Rules, in defining the term "complaint" states it "shall embrace all complaints brought before a Grievance Committee, *whether verbally or in writing*". (Emphasis added.) Section 11 entitled Complaints, Filing of, states:

"It shall be the duty of each District Grievance Committee and its members to receive complaints of professional misconduct, alleged to have been committed by an attorney within the district, or by an attorney having his office or residence therein; *and each committee member shall report to his committee any case of professional misconduct which shall come or be brought to his attention.* The committee may, in any case, require a sworn statement setting forth the matter complained of as a condition to taking further action." (Emphasis added.)

The record shows that defendant deposited his clients' funds in his partnership account on July 16, 1970, and did not pay the doctor or hospital bills until September 1972. The Grievance Committee became aware of this matter upon hearing testimony during a trial where this defendant was prosecuted for embezzlement. The Grievance Committee then started taking action on this case as early as July 20, 1973, well within the four year period from the date of the alleged misconduct. Again, had the Committee served a written complaint on the defendant, the limitations question would have been moot. Nevertheless, defendant's points of error 8 and 9 are overruled.

■ Next, the defendant in his points of error 10 through 13 asserts that there is no evidence or insufficient evidence to support the findings of the jury on special issues No. 2 and 3. The jury found in answer to such issues that the defendant had willfully misapplied unto himself the sum of $361.00. In deciding a no evidence point, an appellate court must consider only the evidence and the inferences tending to support the finding and disregard all evidence and inferences to the contrary. *Garza v. Alviar*, 395 S.W.2d 821 (Tex.Sup.1965); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (Tex.Sup.1951). In deciding an insufficient evidence point, the appellate court is required to consider all of the evidence. *Garza v. Alviar*, supra; *In re King's Estate*, supra.

■ The record reflects that on July 15, 1970, defendant received two insurance drafts that were made payable to Mr. and Mrs. Claire and the defendant. The drafts totaled $1,778.41. Defendant notified the Claires of the same and they came to his office. Defendant then wrote two checks on the partnership account. The first check was made payable to the Claires in the amount of $715.00 as their share of the settlement. The second check was made payable to Tip-Tex Chevrolet for repairs of the Claires' automobile in the sum of $309.50. The Claires and the defendant then endorsed the two insurance drafts. These drafts were then deposited by the defendant on July 16, 1970, in his partnership account. Mrs. Claire requested the defendant to keep the balance of the drafts ($361.00) over the defendant's fees and pay her doctor and hospital bills which she had incurred. The defendant agreed.

The trust funds remained in the partnership account and the bills remained unpaid until September 1972, when Mrs. Claire contacted the defendant inquiring why such bills had not been paid. The defendant requested that Mrs. Claire come by his office and pick up the checks for payment of these bills. The defendant admitted that many times during this two year period the account was low and on several occasions there was perhaps not enough money in the partnership account to cover the total amount of funds that had been previously left there by Mr. and Mrs. Claire on July 15, 1972. The defendant also admitted that many times during the two year period from July 15, 1970, to September 1972, he withdrew funds from the partnership account for his own use and benefit and on behalf of other clients other than the Claires.

The defendant, however, contends that there is no evidence that the defendant wrote any checks that drew the account balance below the $361.00 balance that was needed to cover the bills due the doctor and hospital and, therefore, there was no evidence that he "misapplied the $361.00 unto himself". We agree. We are unable to find any evidence in the record that defendant misapplied any portion of the $361.00 that he put in the partnership account for his own use and benefit. These points of error are sustained.

■ Defendant in his points of error 14–19 asserts that the evidence is legally and factually insufficient to support the jury findings on Special Issues 4, 5 and 6. The jury found in answer to Special Issues 4–6 that on July 13, 1970, defendant willfully commingled funds belonging to Concepcion Claire with his own private funds, without the knowledge and consent of Concepcion Claire. Using the rules set out above concerning no evidence and insufficient evidence points, we find that there was ample evidence to support the jury's findings. These points of error are overruled.

The defendant in his points of error No. 6 and 7 asserts that the absence of fair notice as to the Grievance Committee procedure and the precise nature of the charges in connection with counts five and six and the failure to furnish the defendant a transcript of the exact question and answer made the basis of said counts denied this defendant his rights of due process. Counts five and six read as follows:

"Count Five

That Defendant upon being examined by the Grievance Committee for District 12–B concerning misapplication of funds delivered to him in trust, misstated, under oath, the facts regarding said matters. Such conduct on the part of Defendant constitutes dishonorable conduct for which said Defendant should be, by this Honorable Court, disbarred.

Count Six

It is herein alleged, and Plaintiff would show the Court that the conduct of Defendant in misstating facts to the Grievance Committee for District 12–B is a violation of the Canons of Ethics of the State Bar of Texas and the Code of Professional Responsibility."

The record reflects that on August 2, 1972, a meeting was called by the Grievance Committee for the purpose of considering complaints filed against the defendant by Daniel Lucio and by the California Rural Legal Aid on behalf of Felipe Cantu. Prior to the commencement of the meeting, defendant was sworn in. The Cantu matter involved a complaint much like the Claire matter wherein a complaint was received from Mr. Felipe Cantu in regards to some medical bills incurred by Mr. Cantu in 1969 and for which the defendant had allegedly retained funds to pay, but had not paid them. Defendant was thereafter requested to make immediate payment and to verify the same to the Committee.

After answering questions concerning the Cantu matter, the defendant was then asked generally whether or not he had any other similar matters pending, matters similar to the Cantu case, which involved receiving money. Although the record shows a variation as to the exact form of the question, the record conclusively shows that the substance of the question was whether defendant had any other similar matters to the Cantu matter pending. The defendant replied in effect that there were not any others, the Cantu matter was the only one.

█ The defendant argues that before any inquiry could be made by the Committee, they had to give the defendant adequate notice that he might be questioned about other matters similar to the Cantu matter and that any misstatements by him concerning such facts, might constitute a disbarment offense. This point is without merit.

█ The proceeding before the Grievance Committee is not an adversary process. The Grievance Committee is an investigating body. *Smith v. Grievance Committee*, State Bar of Texas for District 14–A, 475 S.W.2d 396 (Tex.Civ.App.—Corpus Christi 1972, no writ). The aim of its inquiry is to collect and assemble facts and information that will enable the Committee to take such future action as it may deem expedient for the public welfare. The Grievance Committee is not designed or equipped by the rules and regulations of the State Bar Act to conduct a trial. The adversary process and petitioner's day in court is commenced by the filing of the "formal complaint" as provided by the Texas Bar Act. Although the Committee operates informally as it did, it should examine the defendant under oath. The defendant, as an attorney, is required to give accurate and honest information to the questions from the Committee. The attorney's failure to conduct himself honorably before the Committee, will be grounds in and of itself for disciplinary action.

Defendant relies on the case of *In re Ruffalo*, 390 U.S. 544, 88 S.Ct. 1122, 20 L.Ed.2d 117 (1968) in support of his contention that formal notice is required in all particulars. In *Ruffalo*, the proceedings being attacked were the actual disbarment proceedings by the Ohio Board of Commissioners on Grievances and Discipline. Such Board was the investigating body as well as the fact finder and determiner of punishment. There, the attorney's interrogation was in the nature of testimony at a trial and was being heard and evaluated by those who were to pass judgment. Those due process rights denied in *Ruffalo* were guaranteed to appellant in the "formal proceeding" before the district court in this case.

█ In regard to defendant's complaint concerning the plaintiff's failure to

furnish a transcript of the exact questions and answers, defendant relies on several cases involving criminal indictments, for the proposition that defendant is entitled to know the exact form of the question and answer made the basis of counts five and six. *Higgins v. State*, 50 Tex.Cr. 433, 97 S.W 1054 (1906); *Brown v. State*, 40 Tex.Cr. 48, 48 S.W. 169 (1898). It is noted that the Grievance Committee proceedings should not and are not governed by criminal standards. See *Smith v. State*, 523 S.W.2d 1 (Tex.Civ.App.—Corpus Christi 1975, writ ref'd n. r. e.). This point is without merit.

■ The defendant in his last point of error asserts that the trial court erred in signing the judgment in El Paso. The defendant was tried in the county of his residence, that being Cameron County and judgment was rendered on April 21, 1975, in Cameron County, Texas. The judgment was signed May 2, 1975, by the presiding judge, the Honorable George Rodriguez. The defendant asserts that the trial judge signed such judgment in El Paso, thereby abrogating defendant's right of trial in the county of his residence. The trial took place in Cameron County, the jury returned its verdict in Cameron County, and the trial court rendered judgment in Cameron County. It cannot then be said that the defendant's right of trial by jury in the county of his residence was abrogated by the fact that the judge signed the judgment in El Paso, since such signing was merely clerical action on the judge's part. See *Leatherwood v. Holland*, 375 S.W.2d 517 (Tex.Civ. App.—Fort Worth 1964, writ ref'd n. r. e.). All of the defendant's points of error, except 10 through 13, have been considered and are overruled.

In view of our holding, sustaining defendant's points of error 10 through 13, we must now make a determination of the proper disposition of this appeal. The trial court set punishment at a one year suspension, presumably on all three counts. We have no way of knowing whether the judgment was for one year suspension on each of the three counts to run concurrently or for one third of a year on each count to run consec-

utively or some other combination. The trial court failed to segregate the weight to be given to each of the jury's three findings of professional misconduct of misapplication; commingling and misstatements. We, therefore, have no way of knowing what influence the finding of guilty on Count 1 may have had upon the mind of the trial court. See *Smith v. State*, 490 S.W.2d 902 (Tex.Civ.App.—Corpus Christi 1972, writ ref'd n. r. e.).

■ In the case at bar, we believe that the evidence of the false statement made to the Grievance Committee under oath is such dishonorable conduct as would of itself warrant a one year suspension. In affirming the trial court's judgment that the defendant Fred Galindo was guilty of willful and dishonorable acts amounting to professional misconduct, we believe that a one year suspension on the findings of the jury (that Galindo had made a misstatement and had commingled the funds of his client with those of his own) was proper. The imposition by the trial court of a one year suspension from the practice of law on these two counts would not be an abuse of discretion as would require a reversal and remand of the entire case. Rule 434, T.R.C.P.; *Smith v. State*, supra.

In the future, it would be proper for the trial judges in disbarment cases to segregate the amount of punishment corresponding to each act of misconduct. If, as in the case at bar, it is determined by the appellate court that the evidence does not support one or more of the counts or that reversible error occurred as to one or more counts, the appeals court could then look to the punishment assessed by the trial court on those counts which could be affirmed and could then determine the question of abuse of discretion and the necessity vel non of a reversal and retrial.

The judgment of the trial court is AFFIRMED.