Ronnie H. MINNICK, Appellant,

v.

STATE BAR OF TEXAS, Appellee.

No. 3–89–151–CV.

Court of Appeals of Texas,
Austin.

May 16, 1990.
Rehearing Overruled June 20, 1990.

Arthur Mitchell, Bastrop (on appeal only), for appellant.

Linda A. Acevedo, Office of the Gen. Counsel, State Bar of Texas, Austin, for appellee.

Before POWERS, GAMMAGE and JONES, JJ.

JONES, Justice.

Ronnie H. Minnick, defendant below, appeals from a judgment disbarring him and permanently enjoining him from practicing law in Texas. Appellee is the State Bar of Texas (State Bar). The issues raised by Minnick on appeal are: whether he was accorded due process in conjunction with grievance committee proceedings; whether an attorney can be disbarred for acts of misconduct not committed in the course of practicing law, and if so, whether a showing of an inability to represent clients is required; and whether, under the circumstances of this case, the trial court abused its discretion in ordering disbarment. We will affirm the trial court's judgment.

In December 1988 the State Bar brought suit against Minnick, seeking to discipline him for various acts of alleged professional misconduct. These acts related to conduct engaged in by Minnick in his capacity as president of First National Mortgage Company (First National), and involved alleged misappropriations of trust funds and misrepresentations as to the true application of those funds.

Accompanying the citation served on Minnick on January 10, 1989, were a set of interrogatories and a request for production of documents. As required by Rules 167(2) and 168(4) of the Texas Rules of Civil Procedure, both discovery requests gave Minnick fifty days from the date of service to respond. The request for production sought documents relating to three separate real estate transactions in which it was alleged that Minnick had misapplied escrow funds and then misrepresented the application of the funds; the request also sought documents relating to a specified escrow account at Allied Bank North Austin through which First National had settled the three real estate transactions in question. The interrogatories sought detailed information about Minnick, First National, and Minnick's activities as First National's agent.

Although Minnick filed a timely answer to the State Bar's suit, he failed to respond to either discovery request. On March 8 the State Bar filed a motion for sanctions and scheduled a hearing on the motion for March 24. On March 23, the day before the scheduled hearing, Minnick filed an amended answer, answers to interrogatories, and a response to the request for production of documents. The response to the request for production was an unsigned instrument that simply stated: "Be advised that Ronnie H. Minnick is not in possession, custody or control of any documentation whatsoever; and that all such records are in possession of Lane & Gorman, Certified Public Accountants, Dallas, Texas; and a Kenneth L. Kendrick, Capital Bank, Dallas, Texas." In addition, several of the answers to interrogatories were incomplete, some reciting that further information would be provided "upon receipt of applicable accounting records from Kenneth L. Kendrick."

The State Bar proceeded with the scheduled hearing on March 24; Minnick appeared in person. Following the hearing, the trial court ordered that, no later than April 20, 1989, Minnick provide the State Bar with

full and complete answers to Petitioner's First Set of Interrogatories, and ... all documents which are specified and requested in Petitioner's First Request for Production of Documents. Failing full and timely compliance with the provisions of this paragraph, Respondent's answer and any other pleadings shall be stricken, and judgment by default entered against Respondent.

Minnick did not file or serve on the State Bar any further response to the discovery requests. Accordingly, on May 4, 1989, the State Bar filed a "Motion for Sanctions and for Judgment." A hearing on the motion was held on May 18. The trial court then signed an order decreeing that "the First Amended Answer and all other pleadings filed by Respondent Ronnie H. Minnick in this cause be stricken in its entirety, and that judgment by default be entered against Respondent."

At the State Bar's request, and pursuant to procedures set forth in the Rules Governing the State Bar of Texas, the trial court conducted, on June 6 and 7, 1989, a

separate evidentiary hearing on the "appropriate measure of discipline" for Minnick. *See* Supreme Court of Texas, Rules Governing the State Bar of Texas art. 10, § 23(B) (1988) [hereinafter State Bar Rules].[1] On June 7, following the hearing, the trial court signed a judgment disbarring Minnick as of July 7, 1989, and permanently enjoining him from practicing law in Texas after that date. Minnick did not file a motion for new trial or other post-judgment motion.

■ In his first point of error, Minnick asserts that he was denied due process of law in the administrative proceedings because he was not granted a hearing or otherwise permitted to defend himself before the local grievance committee. We will overrule this point on two independent grounds. First, by this appeal, Minnick challenges only the judgment of disbarment; he does not challenge the trial court's order striking his pleadings and directing that a default judgment be entered against him. Accordingly, he stands before this Court, as he did before the trial court, as if he had never filed an answer to the State Bar's suit. *See Fiduciary Mortgage Co. v. City Nat'l Bank,* 762 S.W.2d 196, 200 (Tex.App.1988, writ denied); *Assicurazioni Generali, S.p.A. v. Milsap,* 760 S.W.2d 314, 317 (Tex.App.1988, writ denied); *see also Sutton v. State Bar of Texas,* 750 S.W.2d 853 (Tex.App.1988, writ ref'd n.r.e.) (upholding the application of Tex.R.Civ.P. 215(2)(b)(5) to disbarment proceedings). Thus, even though Minnick's First Amended Answer expressly alleged a violation of his due process rights, the striking of his pleadings effectively wiped out that allegation.

Virtually any right, including a constitutional right, may be waived if not timely pleaded or otherwise properly presented to the trial court. *See Texaco, Inc. v. Pennzoil, Inc.* 729 S.W.2d 768, 856–58 (Tex.App. 1987, writ denied), cert. dism'd, 485 U.S. 994, 108 S.Ct. 1305, 99 L.Ed.2d 686 (1988). In the absence of any pleading or other showing that he raised the issue of the alleged violation of his due process rights in the trial court and obtained a ruling thereon, Minnick must be considered to have waived any such complaint. *See* Tex. R.App.P. 52(a).

■ Second, even if Minnick could raise his due process complaint in this appeal, it is without merit. On October 29, 1986, the chairman of the local grievance committee sent Minnick a letter informing him that a formal complaint had been filed against him by "A.J. Waight, Jr. of Security Title Company, Austin, Texas," and inviting Minnick to respond. On November 6, 1986, Minnick did respond, by a letter in which he admitted that as a result of financial problems relating to the business of First National, "a material descrepency [sic] does exist and steps are being taken to rectify the situation." Minnick's letter did not, however, request a hearing before the local grievance committee. Indeed, there is no indication that a hearing was ever held. The record reflects only that more than two years later, on December 29, 1988, the State Bar filed the present suit in the district court of Travis County. It is primarily the failure to conduct a hearing at which Minnick could present evidence in his defense (or the failure to notify him of any hearing that was in fact held) that Minnick asserts was a denial of his due process rights. We disagree.

Minnick directs us to certain portions of the State Bar Rules that arguably require a grievance committee to conduct a hearing before taking any action against an attorney. *See* State Bar Rules art. 10, § 14(A); *see also Gamez v. State Bar of Texas,* 765 S.W.2d 827, 832–33 (Tex.App.1988, writ denied). Other provisions appear to make a hearing optional, at least in the absence of a specific request from the accused attorney. *See* State Bar Rules art. 10, § 10(E). For purposes of this appeal, however, the crucial issue is not whether a hearing is required by applicable statutes or rules, but whether one is required by the due

---

**1.** The State Bar Rules, promulgation of which is authorized by section 81.024 of the State Bar Act, Tex. Gov't Code Ann. § 81.024 (1988), are found in an appendix to Subtitle G ("Attorneys") of Title 2 ("Judicial Branch") of the Government Code.

process clause of the fourteenth amendment to the United States Constitution. We are convinced that Minnick's due process rights were not violated.

"An elementary and fundamental requirement of due process *in any proceeding which is to be accorded finality* is notice reasonably calculated, under the circumstances, to apprise interested parties of the pendency of the action and afford them the opportunity to present their objections." *Peralta v. Heights Medical Center, Inc.*, 485 U.S. 80, 84, 108 S.Ct. 896, 899, 99 L.Ed.2d 75 (1988) (emphasis added). In the present case, the procedure used by the grievance committee and the State Bar permitted Minnick to respond in writing to the complaint against him. However, because Minnick did not request to be permitted to defend himself at a hearing, none was granted. Assuming *arguendo* that due process would require something more than the mere opportunity to respond in writing, still the right attaches only in a proceeding that is to be "accorded finality."

Article 10, section 14(A) of the State Bar Rules provides that if the grievance committee finds that the respondent attorney has engaged in professional misconduct, the committee "shall determine appropriate sanctions or take appropriate action." However, the committee's decision appears to have no finality at all unless the attorney consents to it. If the attorney does not accept the decision, the State Bar must file suit in district court. State Bar Rules art. 10, § 14(D); *see Munson v. State*, 576 S.W.2d 440 (Tex.Civ.App.1978, writ ref'd n.r.e.). Indeed, the committee is not even required to prepare a form of judgment unless "the committee ... shall have reason to believe the respondent will accept its action as final." State Bar Rules art. 10, § 14(B).

A grievance committee's investigations have been compared to an inquisition by a grand jury. *State v. Sewell*, 487 S.W.2d 716, 718 (Tex.1972). An accused has no right to be present at grand jury proceedings. *See* Tex.Code Crim.P.Ann. arts. 20.01–20.22 (1977 & Supp.1990); *cf. Lopez v. State*, 158 Tex.Crim. 16, 252 S.W.2d 701

cert. denied, 344 U.S. 893, 73 S.Ct. 213, 97 L.Ed. 691 (1952). Nonetheless, as long as an indictment is valid on its face and the grand jury is legally constituted, a due process complaint will not be sustained. *Crocker v. State*, 573 S.W.2d 190, 204 (Tex. Cr.App.1978).

Minnick cites *Galindo v. State*, 535 S.W.2d 923 (Tex.Civ.App.1976, no writ), as support for his due process claim. Although *Galindo* contains language that arguably supports the proposition that due process requires a grievance committee to conduct a hearing, a closer inspection reveals that the court did not so hold. The court's ultimate holding was that the defendant's due process rights were not denied because: (1) any due process requirements were satisfied, because the grievance committee conducted two hearings at which the accused attorney was present and had the opportunity to present witnesses in his defense; and (2) in any event, proceedings before a grievance committee have no finality. *Id.* at 927; *see also Wilson v. State*, 582 S.W.2d 484, 487 (Tex.Civ. App.1979, no writ). We conclude that Minnick's due process rights were not violated in the present case.

■ Minnick also asserts, however, that section 13 of the Administrative Procedure and Texas Register Act (APTRA), Tex.Rev. Civ.Stat.Ann. art. 6252–13a (Supp.1990), expressly requires a hearing in all contested cases. This contention is without merit. Because grievance committees are agencies of the judicial branch of government, and because they neither make rules nor determine contested cases, they are not subject to APTRA. *Green v. State*, 589 S.W.2d 160, 164 (Tex.Civ.App.1979, no writ); Tex. Rev.Civ.Stat.Ann. art. 6252–13a, § 3(1) (Supp.1990). Point of error one is overruled.

In points of error two and three, Minnick argues that the trial court erred in disbarring him as a result of his activities as president of First National, because (1) he engaged in those activities, including the acts for which he was disbarred, in his capacity as a private person, not as an

attorney, and (2) the record does not show that he is unable to represent clients.

Minnick relies on *Lotto v. State*, 208 S.W. 563 (Tex.Civ.App.1919, no writ), and *Jackson v. State*, 21 Tex. 668 (1858), as authority for the proposition that a lawyer cannot be disciplined for acts committed as a private person. In *Lotto* and *Jackson*, disbarment was obtained pursuant to a statute that prohibited "dishonorable conduct," and both courts held that in order to be grounds for disbarment, such conduct had to be committed while acting in one's capacity as an attorney rather than as a private person. Similar statutory language is now contained in section 82.062 of the Government Code: "Any attorney who is guilty of ... any fraudulent or dishonorable conduct ... may be suspended from practice, or the attorney's license may be revoked...." Tex. Gov't Code Ann. § 82.062 (1988).

In the present case, however, the State Bar neither sought nor obtained disbarment pursuant to section 82.062. The State Bar's petition states:

> Petitioner [Grievance Committee for State Bar District Number 2–A, State Bar of Texas] brings this disciplinary action pursuant to the State Bar Act, Tex. Gov't Code Ann. § 81.001 et seq. (Vernon 1988), and the State Bar Rules. The acts and conduct of Respondent [Minnick], as hereinafter described, constitute professional misconduct under the State Bar Rules Art. X, § 7.

The petition goes on to allege that Minnick's role in each of the three transactions in question constituted a violation of DR 1–102(A)(4) of the Code of Professional Responsibility: "A lawyer shall not ... [e]ngage in conduct involving dishonesty, fraud, deceit, or misrepresentation."

The State Bar Act is comprised of chapter 81 of the Government Code (§§ 81.001–81.111), and does not include any portion of chapter 82. Article 10, section 9 of the State Bar Rules constituted what was then known as the "Texas Code of Professional Responsibility," and included DR 1–102(A)(4).[2]

■ Significantly, article 10, section 7 of the State Bar Rules, on which the present suit was expressly based, provides as follows:

> Discipline may be imposed for professional misconduct which includes:
>
> (1) Acts or omissions by a lawyer, individually or in concert with another person or persons, which violate the Texas Code of Professional Responsibility, *whether or not the acts or omissions occurred in the course of a lawyer-client relationship.*

(Emphasis added.) We conclude that the trial court did not err in disbarring Minnick for conduct that was committed in his capacity as a private person rather than in his capacity as an attorney.

Minnick also argues, however, that even if an attorney can be disbarred for acts committed as a private person, disbarment is nonetheless improper in such cases unless the conduct in which the accused attorney engaged demonstrates his "inability to represent clients." Minnick relies primarily on *Polk v. State Bar of Texas*, 374 F.Supp. 784 (N.D.Tex.1974), for this proposition. We are convinced, however, that *Polk* is distinguishable.

The conduct for which Polk was to be reprimanded was the making of derogatory statements to the media about a judge and district attorney in connection with Polk's own DWI case. The issue in the federal court suit was the extent to which Polk's statements were protected by the first amendment to the U.S. Constitution. The court held that, in the context of acts committed in the capacity of a private citizen, there are generally only two areas where a state has a sufficient interest in prescribing standards of attorney conduct to permit a restriction of the exercise of free speech: (1) conduct that interferes with the processes of the administration of justice, and (2) conduct "which shows his inability to

---

**2.** By order of the Texas Supreme Court, former article 10, § 9 of the State Bar Rules was repealed, effective January 1, 1990, and replaced by the Texas Disciplinary Rules of Professional Conduct.

represent clients competently and honestly." *Id.* at 787–88. The court concluded that "[a] state may not regulate an attorney's exercise of his right to free speech under the guise of prohibiting professional misconduct unless his conduct clearly falls into one of these two categories of significant state interest." *Id.* at 788.

The present case does not involve any issue regarding Minnick's exercise of his constitutional rights. Accordingly, the holding of *Polk* is inapplicable. The statutes, rules, and cases that do apply to this case give no indication whatsoever that an "inability to represent clients" is an essential requirement before an attorney may be disciplined, and we conclude that it is not. In any event, if such inability were a requirement, we would hold that the facts and circumstances of the instant case adequately show an inability to represent clients *honestly*. Points of error two and three are overruled.

In his fourth point of error, Minnick asserts that the trial court abused its discretion in ordering disbarment. The gravamen of this point is that the trial court should have ordered a less severe sanction.

The punishment to be assessed Minnick was a matter "addressed to the sound discretion of the trial court." *State v. Ingram*, 511 S.W.2d 252, 253 (Tex.1974). The test for abuse of discretion is whether the action of the trial court was "without reference to any guiding rules and principles" or was "arbitrary or unreasonable." *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985), cert. denied, 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986).

The State Bar Rules provide valuable guidance as to the relevant factors to be considered by the trial court in assessing discipline:

In determining the appropriate measure of discipline, the trial court shall consider, in addition to any other relevant matters, the nature and degree of misconduct for which the respondent is being disciplined, the seriousness and circumstances attending the misconduct, assurance that those who seek legal services will be insulated from unprofessional conduct, the profit to the attorney or the injury or hardship to others resulting from the misconduct, avoidance of repetition, the deterrent effect upon others, the maintenance of respect for the honor and dignity of the legal profession, and the conduct of the respondent during the course of the investigation and trial of the disciplinary action. In addition thereto, the disciplinary record of the respondent is admissible on the issue of the appropriate measure of discipline to be imposed.

State Bar Rules art. 10, § 23(B).

The effect of the striking of Minnick's pleadings was that he "admitted" the allegations in the State Bar's petition. *Stoner v. Thompson*, 578 S.W.2d 679, 682 (Tex. 1979); *Fiduciary Mortgage Co. v. City Nat'l Bank*, 762 S.W.2d at 200. The following is a representative excerpt from the State Bar's petition:

On or about August 26, 1985, Respondent [Minnick], in his capacity as settlement agent, closed or caused to be closed the sale of a property located at 4303 Creekledge # 6, Austin, Texas.... El Paso Federal Savings & Loan Association was the lender for the purchasers. Respondent, or an agent of Respondent acting at Respondent's direction, prepared the settlement statement for this transaction. The property conveyed was encumbered by a superior lien, in the principal amount of Seventy–Four Thousand and no/100 Dollars ($74,000.00), held by First Republic Bank Austin, N.A.

On or about October 3, 1985, El Paso Federal Savings & Loan Association wire-transferred the sum of Seven Hundred Forty–Six Thousand, One Hundred Thirty and 20/100 Dollars ($746,130.20) to an account subject to Respondent's control, namely the First National Mortgage Corporation Escrow Account, account number 114906715–0042–7229 at Allied Bank North Austin. A portion of the wire-transferred sum was to be used by Respondent to retire or pay off the superior lien held by First Republic Bank Austin, N.A. Respondent wholly failed

to retire or pay off this superior lien. Respondent, further, falsely represented to Security Title Company of Austin, Texas, that Respondent had retired or paid off this superior lien, and on the strength of Respondent's false representation, Security Title Company issued a policy of title insurance, insuring title to the conveyed property. Respondent did not use any portion of the sum wire-transferred by El Paso Federal Savings & Loan Association for the purpose of retiring or paying off the superior lien held by First Republic Bank Austin, N.A., nor, upon demand by agents of Security Title Company, did Respondent provide any accounting of the disposition of the funds wire-transferred by El Paso Federal Savings and Loan for this purpose.

The petition contains similar allegations regarding the other two transactions in question. The total amount of trust funds alleged to have been misapplied by Minnick exceeds $250,000.

Thus, the acts of misconduct for which Minnick is being disciplined, and the circumstances attending the misconduct, are serious indeed. In addition, Minnick's failure to produce the bank records and other information in response to proper discovery requests and a court order is a relevant factor weighing heavily against him. Of the other factors mentioned in article 10, section 23 of the State Bar Rules, some, such as the "injury to others," are the subject of disputed evidence, while others, such as his disciplinary record, appear to weigh in Minnick's favor. On balance, we conclude that the trial court was well within its discretion in ordering disbarment as opposed to a lesser punishment. Point of error four is overruled.

The judgment of the trial court is affirmed.

GAMMAGE, J., not participating.