Henry B. GONZALEZ, Jr., Appellant,

v.

The STATE BAR OF TEXAS, Appellee.

No. 04–94–00438–CV.

Court of Appeals of Texas,
San Antonio.

July 12, 1995.

Rehearing Overruled Aug. 9, 1995.

Elizabeth C. Bloch, David W. Hilgers, Benjamin H. Hathaway, Albert A. Carrion, Jr., Hilgers & Watkins, P.C., Austin, for appellant.

Linda Acevedo, Assistant General Counsel, Office of the General Counsel, Austin, Joanne M. Vorpahl, Brian E. Davis, Kristina M. Kerwin, Porter & Hedges, L.L.P., Houston, for appellee.

Before STONE, GREEN and CANTU, JJ.

CANTU, Justice [1].

This is an appeal from the granting of a summary judgment in favor of the State Bar of Texas assessing a public reprimand and costs of the disciplinary proceeding against an attorney.  We affirm.

On March 18, 1993, the State Bar of Texas, acting through the grievance committee, State Bar District 10A [2], instituted this action against Henry B. Gonzalez, Jr., a practicing attorney, seeking "a judgment of disbarment, suspension or reprimand, as the facts might warrant".  The State Bar alleged that Gonzalez had committed certain acts and conduct

---

1.  Assigned to this case by the Chief Justice of the Supreme Court of Texas pursuant to TEX.GOVT CODE ANN. § 74.003(b) (Vernon 1988).

2.  Grievance Committee, State Bar District 12A, although originally a joint filer of the complaint, did not address the complaint or otherwise participate in any manner.

in violation of Article X, Section 7 of the Rules Governing the State Bar of Texas.

Specifically, the State Bar alleged violations of Disciplinary Rules of Professional Conduct, DR 7.01(a)(1), DR 7.01(a)(2), DR 7.01(f)(4) and DR 8.04(a)(1), in that, in December 1991, Gonzalez had mailed letters to various prospective clients, including three named individuals, for the purpose of soliciting employment. The letters, identical in all respects, allegedly contained statements which were misleading, false or created a likelihood of an unjustified expectation about the results that Gonzalez could achieve. Gonzalez filed his motion for summary judgment and the State Bar countered with its motion for summary judgment. Subsequently, the State Bar amended its motion to seek a partial summary judgment as to alleged violations of the Disciplinary Rule 7.01(a)(1) only.

The trial court granted the State Bar's motion and overruled Gonzalez's motion for summary judgment. The State Bar then nonsuited the remaining claims and this appeal followed.

Appellant Gonzalez has brought forward five alleged instances of trial court error in granting the State Bar's motion for partial summary judgment as well as assigned error in the trial court's denial of his motion for summary judgment. We address each contention under the following guidelines.

■ Where both parties move for summary judgment, each party must carry his own burden of establishing a right to judgment. Neither can prevail solely because the other party failed to discharge his burden. *The Atrium v. Kenwin Shops of Crockett, Inc.,.* 666 S.W.2d 315, 317 (Tex.App.—Houston [14th Dist.] 1984, ref'd n.r.e.).

■ The question on appeal, as well as in the trial court, is not whether the summary judgment proof raises fact issues with reference to the essential elements of a plaintiff's claim or cause of action, but is whether the summary judgment proof establishes, as a matter of law, that there is no genuine issue of fact as to one or more of the essential elements of the plaintiff's cause of action.

*Gibbs v. General Motors Corp.,* 450 S.W.2d 827, 828 (Tex.1970).

■ When counter motions for summary judgment are properly before the trial court at the time judgment is rendered, all the evidence accompanying both motions should be considered in deciding whether to grant either party's motion. *Dallas County Appraisal Dist. v. Institute for Aerobics Research,* 766 S.W.2d 318, 319 (Tex.App.—Dallas 1989, writ denied); *Woods v. Applemack Enters. Inc.,* 729 S.W.2d 328, 331 (Tex. App.—Houston [14th Dist.] 1987, no writ).

■ On appeal, where the only question presented is one of law, the proper course is for this court to render judgment for the party whose summary judgment motion should have been granted if either motion should have been granted. *Members Mutual Ins. Co. v. Hermann Hosp.,* 664 S.W.2d 325, 328 (Tex.1984).

The State Bar's motion for partial summary judgment in pertinent part alleged:

> ... Respondent is alleged, among other things, to have violated the following Disciplinary Rule of the Texas Disciplinary Rules of Professional Conduct, in force and effect at the time of Respondent's conduct: DR 7.01(a)(1) [making a false or misleading communication about the qualifications or the services of any lawyer or law firm because said communication contains a mutual misrepresentation of fact or law, or omits a fact necessary to make the statement considered as a whole not materially misleading including mentioning a fee without stating the amount of the fee whether or not contingent or whether the client would be charged costs].

\* \* \* \* \* \*

It is undisputed that Respondent sent the letters, that the letters were sent for the purpose of obtaining employment as an attorney, that the letters were advertisements and that the letters contained language regarding Respondent's fees. The letters contain false, misleading and deceptive statements in that, among other things, Respondent failed to distinguish between legal "fees" and "costs" when he referred to no legal fees being owed by the

client absent a recovery, and Respondent failed to state the amount of the fee or whether the client would be responsible for any costs. There are no genuine issues of material fact in dispute in this case concerning Respondent's violation of DR 7.01(a)(1) with regard to language regarding Respondent's fee.

\* \* \* \* \* \*

Respondent's letter states that he will charge no legal fees unless he wins "an award of [sic] settlement" for the recipient.

\* \* \* \* \* \*

Respondent's letters failed to distinguish between legal fees and costs as required by DR 7.01(a)(1).... Further, Respondent failed to state the amount of his fee as required by DR 7.01(a)(1).

The letter in question offered as summary judgment proof *in haec verba* recites:

Re: D/O/A:

Dear

We have good reason to believe that your recent injuries may be worth a large cash award. You may also have coming several other valuable benefits. These would include lost wages, medical expenses, a new car, a money award for pain, punitive damages, lifetime monthly checks, and lump sum cash payments.

If you will call me at XXX–XXXX, I will explain your rights and talk to you about every detail of your case, free. I charge no legal fees unless I win an award of settlement for you. *YOU DO NOT NEED MONEY TO HIRE ME.*

My law firm has collected millions of dollars for injured people just like you. We'll help you get a fair shake and a fair settlement. We know how to increase the value of your claims. We know how to get maximum cash in minimum time. We'll go after every dollar. We'll battle to get you what you want.

Don't make a mistake that could cost you a fortune. Call me before you talk to anyone else about your accident. You have everything to gain. We will meet with you in my office or your home. (WE MAKE HOUSE CALLS) Appointments are not necessary you can just come in.

We will meet with you at your convenience, 7 days a week, 24 hours a day. Our local San Antonio number is XXX–XXXX. If you are calling from outside San Antonio, call us free at 1–800–XXX–XXXX.

Sincerely yours,

Henry B. Gonzalez, Jr.

Gonzalez's response to the motion for summary judgment filed by the State Bar essentially denied the existence of competent summary judgment evidence to support the State Bar's motion and merely asserted that the combined proof supported a contrary finding, as a matter of law. It then relied upon pleadings, affidavits and excerpts from depositions attached to the response. The proof for the most part duplicated itself in the two motions.

The summary judgment entered by the trial court recites in relevant part:

The Court, based upon all the pleadings and papers on file in this case and the law applicable thereto, is of the opinion and so finds that the allegations of Petitioner's Fourth Amended Disciplinary Petition regarding Respondent's violation of disciplinary rule 7.01(a)(1) of the Texas Disciplinary Rules of Professional Conduct are true in that Respondent made a false or misleading statement in an advertisement by mentioning fees without stating the amount of the fee, whether contingent or not, and not stating whether the client would be responsible for any of the costs involved. The court finds that this conduct on the part of the Respondent constitutes a violation of Disciplinary Rule 7.01(a)(1) of the Texas Disciplinary Rules of Professional Conduct.

As to this violation the Court finds the Respondent guilty of professional misconduct as defined in Article X, Section 7 of the rules governing the State Bar of Texas.

\* \* \* \* \* \*

Based on the evidence presented and the law applicable thereto, the court concludes and is of the opinion and so finds that the proper discipline of the Respondent for his

professional misconduct is a public reprimand.

Disciplinary Rule 7.01(a)(1) of the Texas Disciplinary Rules of Professional Conduct in force at the time provided:

(a) A lawyer shall not make a false or misleading communication about the qualifications or the services of any lawyer or law firm. A statement is false or misleading if it:

(1) Contains a material misrepresentation of fact or law, or omits a fact necessary to make the statement considered as a whole not materially misleading. *Any statement about fees must include the amount of the fee, whether contingent or otherwise, and must state whether the client may be obligated for all or for some portion of the costs involved;* ...

TEX.DISCIPLINARY R.PROF.CONDUCT 7.01(a)(1) (1989), *reprinted in* TEX.GOV'T CODE ANN., tit. 2, subtit. G app. (Vernon Supp.1995) (STATE BAR RULES art. X, § 9) (emphasis added).

Gonzalez's First Point of Error is that he did not, as a matter of law, violate Disciplinary Rule 7.01(a)(1).

He admits to sending the various letters for the purpose of soliciting employment. But he argues that the portion of the letter that reads:

If you will call me at XXX–XXXX, I will explain your rights and talk to you about every detail of your case free. I charge no legal fees unless I win an award of [sic] settlement for you. You do not need money to hire me.

contains no misrepresentation of fact with respect to fees. It is further contended that the summary judgment evidence shows that each of the factual statements contained in the letter was true and accurate.

Gonzalez's affidavit declares that his practice was to mail such a letter only to individuals involved in automobile accidents in which the other party was cited by responsible police authorities as having committed a traffic violation and in which the particular police

report noted some damage to person or property. During the period in question, Gonzalez's practice was to charge no legal fees or costs to his clients unless he won an award or settlement in connection with their case.

Gonzalez further argues that the letter did not omit any facts necessary to make the statements contained in the letter considered as a whole not materially misleading because it is obvious [3] that his practice did not contemplate a charge of either fees or costs unless a favorable recovery was had. In view of his practice, Gonzalez argues, any failure to distinguish between fees and costs is immaterial.

In passing, we observe that Gonzalez does not deny the claimed infirmities in the letter but would have us disregard such omissions as immaterial because, as he says, there are no charges anyway unless recovery is had. His approach begs the question.

■ In our opinion, it is manifestly clear that Gonzalez failed to comply with the provisions of DR 7.01(a)(1) because, having mentioned fees, he failed to mention how the amount of fee would be arrived at and whether or not the client would be responsible for any costs.

We find nothing in the rule that excepts or excuses an attorney from compliance because of some practice he might adhere to. Interestingly, Gonzalez argues that it is unreasonable to require that the contingent fee situation be spelled out in a letter, yet he never touches on his failure to address costs.

In *Zauderer v. Office of Disciplinary Counsel,* 471 U.S. 626, 105 S.Ct. 2265, 85 L.Ed.2d 652 (1985), a very similar situation was before the court involving an Ohio statute regulating legal advertisement which permitted advertising that cases would be taken on a contingent fee basis, "provided that the statement discloses whether [contingent fee] percentages are computed before or after deduction of court costs and expenses."

---

3. Webster's Third New International Dictionary of the English Language, Unabridged, (1981) defines obvious as "... readily and easily perceived by the sensibilities or mind: requiring very little insight or reflection to perceive, recognize or comprehend ... easily understood: requiring no thought or consideration to understand or analyze: so simple and clear as to be unmistakable ..."

One of the advertisements in issue stated "[I]f there is no recovery, no legal fees are owed by our clients." No distinction was made between fees and costs.

The United States Supreme Court, in addressing the reasonableness of a requirement similar to the one before us in DR 7.01(a)(1), stated:

> "The State has attempted only to prescribe what shall be orthodox in commercial advertising, and its prescription has taken the form of a requirement that Appellant include in his advertising purely factual and uncontroversial information about the terms under which his services will be available. Because the extension of the First Amendment protection to commercial speech is justified principally by the value to consumers of the information such speech provides. Appellant's constitutionally protected interest in *not* providing any particular factual information in his advertising is minimal.

\*   \*   \*   \*   \*   \*

We recognize that unjustified or unduly burdensome disclosure requirements might offend the First Amendment by chilling protected commercial speech. But we hold that an advertiser's rights are adequately protected as long as disclosure requirements are reasonably related to the State's interest in preventing deception of consumers.

The State's application to appellant of the requirement that an attorney advertising his availability on a contingent fee basis disclose that clients will have to pay costs even if their lawsuits are unsuccessful (assuming that to be the case) easily passes muster under this standard. Appellant's advertisement informed the public that "if there is no recovery, no legal fees are owed by our clients." The advertisement makes no mention of the distinction between "legal fees" and "costs", and to a layman not aware of the meaning of these terms of art, the advertisement would suggest that employing appellant would be a no-lose proposition in that his representation in a losing cause would come entirely free of charge. The assumption that substantial numbers of potential clients would

be so misled is hardly a speculative one: it is a commonplace that members of the public are often unaware of the technical meanings of such terms as "fees" and "costs"—terms that, in ordinary usage, might well be virtually interchangeable. When the possibility of deception is as self-evident as it is in this case, we need not require the State to "conduct a survey of the ... public before it [may] determine that the [advertisement] had a tendency to mislead." 471 U.S. at 651–653, 105 S.Ct. at 2281–2282, 85 L.Ed.2d at 672–673 (citations omitted).

\*   \*   \*   \*   \*   \*

The State's position that it is deceptive to employ advertising that refers to contingent fee arrangements without mentioning the clients' liability for costs is reasonable enough to support a requirement that information regarding the client's liability for costs be disclosed." 471 U.S. at 653, 105 S.Ct. at 2282–2283, 85 L.Ed.2d at 673.

We overrule appellant's first and sixth points of error and hold that the letter, in failing to distinguish between fees and costs, is inherently misleading and is amenable to State's regulation requiring additional disclosure to prevent public deception. *Zauderer, supra; In re R.M.J.*, 455 U.S. 191, 202–203, 102 S.Ct. 929, 937, 71 L.Ed.2d 64, 73–74 (1982); *Bates v. State Bar of Arizona*, 433 U.S. 350, 375, 97 S.Ct. 2691, 2704–2705, 53 L.Ed.2d 810, 830 (1977); *see also Ibanez v. Florida Dept. of Business and Professional Regulation, Bd. of Accountancy*, 512 U.S. ——, 114 S.Ct. 2084, 129 L.Ed.2d 118 (1994).

Point of error two advances the argument that Disciplinary Rule 7.01(a)(1), as written and applied to appellant, violates his rights to commercial free speech guaranteed him by the First and Fourteenth Amendments to the United States Constitution.

Essentially, the argument made is that the language in the letter is not inherently misleading but is merely "potentially misleading".

We have already found that the letter, as written, has the effect of presenting an inaccurate picture even though isolated state-

ments may in fact have been true. The letter is inherently misleading, not potentially misleading. But, even if the letter be only potentially misleading, the State Bar may still enact measures other than a total ban to prevent deception and confusion. *Peel v. Attorney Registration and Disciplinary Comm'n of Illinois,* 496 U.S. 91, 116, 110 S.Ct. 2281, 2300, 110 L.Ed.2d 83, 104 (1990); *In Re R.M.J.,* 455 U.S. at 203, 102 S.Ct. at 937, 71 L.Ed.2d at 74.

■ Moreover, an attorney's rights as an advertiser are adequately protected as long as the disclosure requirements are reasonably related to the State's interest in preventing the deception of consumers. *Zauderer,* 471 U.S. at 651, 105 S.Ct. at 2282, 85 L.Ed.2d at 673; *Bates,* 433 U.S. at 375, 97 S.Ct. at 2704–2705, 53 L.Ed.2d at 830.

■ The disclosure requirements of DR 7.01(a)(1) are reasonably related to the State's interest in preventing deception of consumers and is not violative of appellant's right to commercial free speech nor offensive to the First and Fourteenth Amendments to the United States' Constitution. The contention is overruled.

Point of error three alleges that DR 7.01(a)(1), as written and applied to appellant, violates his due process rights guaranteed him by the Fifth and Fourteenth Amendments to the United States Constitution because the rule is, allegedly, unconstitutionally vague and overly broad.

The main thrust of Gonzalez's argument seems to be that the rule gives no guidance as to what is meant by "any statement about fees" and "amount of the fee".

The rule requires that "[a]ny statement about fees must include the amount of the fee, whether contingent or otherwise, and must state whether the client may be obligat-

ed for all or for some portion of the costs involved."

■ We perceive nothing ambiguous about the rule. The language is concise and clear. Moreover, there is nothing unduly burdensome about such a requirement. Appellant, in his affidavit, suggests that he routinely complied with the requirement and, in fact, has attached a copy of his usual contingent fee contract, to his summary judgment proof, which discloses the precise information required by DR 7.01(a)(1).

■ We fail to see how Gonzalez was deprived of due process of law or in what manner the rule is unconstitutionally overly broad[4] or vague.[5] Point of error three is overruled.

Points of error four and five challenge the State Bar's standing to file the disciplinary suit and invoke the doctrines of res judicata and collateral estoppel as a preclusion to the granting of a summary judgment.

Gonzalez asserts that the trial court had no jurisdiction to entertain the disciplinary action because the underlying complaint was filed by the State Bar of Texas, rather than by an individual complainant. The summary judgment record reflects that the State Bar and three individuals filed identical complaints.[6] Both the Childress complaint and the State Bar complaint were addressed by the grievance committee for the State Bar District 10A on the same day, September 2, 1992.

Because of similarities, and to avoid duplication of efforts, the committee elected to pursue the State Bar complaint and further decided that continued prosecution of the Childress complaint was unnecessary. A decision was made to dismiss the Childress complaint and a letter was sent by the committee to Childress stating that the commit-

---

**4.** Appellant, although claiming overbreadth, has not argued it as such. Nevertheless, if he refers to the First Amendment Overbreadth Doctrine, it is clearly not applicable to professional advertising. *See Bates v. State Bar of Arizona,* 433 U.S. at 379–381, 97 S.Ct. at 2706–2707, 53 L.Ed.2d at 834.

**5.** We note that the United States Supreme Court in *Zauderer,* note 15, 471 U.S. at 653, 105 S.Ct. at

2283, 85 L.Ed.2d at 673–674, addressed the potential for such a problem in the Ohio rule which appears to be less informative and directive than the rule before us.

**6.** Complaints were filed by Elizabeth Childress, Kevin Standifer and Rene Sandoval, as well as by the State Bar of Texas. Only the Childress and State Bar complaints were addressed.

tee had found no professional misconduct by Gonzalez with regards to the solicitation letter. Another letter was mailed at the same time to Gonzalez informing him that the committee had concluded that he had committed professional misconduct arising out of conduct complained of in the State Bar complaint.

In his motion for summary judgment, Gonzalez argued to the trial court that the disciplinary action was precluded, as a matter of law, by the doctrines of res judicata and collateral estoppel. It was argued before the trial court, and now before this court, that because neither Childress nor the State Bar appealed from the "decision" in the Childress matter, within 20 days, such decision became final and binding, while the State Bar complaint was still pending.

The State Bar countered by summary judgment affidavit, stating that the letter finding "no professional misconduct" was sent to Childress through error and that the State cannot be estopped by the unauthorized acts or mistakes of its agents, citing *City of San Angelo v. Deutsch,* 126 Tex. 532, 91 S.W.2d 308, 309–10 (1936); *State v. Sewell,* 487 S.W.2d 716, 719 (Tex.1972) and similar cases. The State Bar additionally argues that a grievance committee's dismissal of a complaint on nonsubstantive grounds is not res judicata to the filing of a subsequent complaint based on the same conduct. See *State v. Sewell,* supra at 718.

We believe the issue has been settled by the decisions of numerous courts of our state.

In *Smith v. Grievance Committee, State Bar of Texas for District 14–A,* 475 S.W.2d 396 (Tex.Civ.App.—Corpus Christi 1972, no writ), the court reflected:

> ... the proceeding before the Grievance Committee is not an adversary process. The committee is an investigating body. The aim of its inquiry is to collect and assemble facts and information that will enable the committee to take such future action as it may deem expedient for the public welfare. The Grievance Committee is not designed or equipped by the rules and regulations of the State Bar Act to conduct a trial. The adversary process

and petitioner's day in court is commenced by the filing of the formal complaint as provided by the Texas Bar Act. 475 S.W.2d at 399. (citations omitted)

*See also McGregor v. State,* 483 S.W.2d 559, 562 (Tex.Civ.App.—Waco 1972, *rev'd other grounds, dism'd as moot,* 487 S.W.2d 693 (Tex.1972) (per curiam)) (the power of a grievance committee to serve as an investigatory agency, under the procedures outlined in the rules, ends with the filing of the lawsuit); *Green v. State,* 589 S.W.2d 160, 164 (Tex.Civ.App.—Tyler 1979, no writ) (a grievance committee does not have statewide jurisdiction, promulgates no rules and does not decide "contested cases"); *accord Galindo v. State,* 535 S.W.2d 923, 927 (Tex.Civ.App.—Corpus Christi 1976, no writ) ("the Grievance Committee's proceedings do not accord finality in that such action taken by the Committee ... can always be brought before a district court for a final determination of the merits of the complaints"); *State v. Sewell,* 487 S.W.2d at 718 (the committee's prior decision did not ever rise to the level of a final determination of the merits of the complaints before them, and they are not res judicata); *see also Minnick v. State Bar of Texas,* 790 S.W.2d 87 (Tex.App.—Austin 1990, writ denied).

■ Res judicata is the doctrine that a right, question, or fact, distinctly put in issue and directly determined by a court of competent jurisdiction as a ground of recovery or defense, cannot be disputed in a subsequent suit between the same parties or their privies. *See Sutherland v. Cobern,* 843 S.W.2d 127, 130 (Tex.App.—Texarkana 1992, writ denied).

■ Collateral estoppel is narrower than res judicata. It is frequently characterized as issue preclusion because it bars relitigation of any ultimate issue of fact *actually litigated* and essential to the judgment in a prior suit, regardless of whether the second suit is based upon the same cause of action. *See Buster v. Metropolitan Transit Auth.,* 835 S.W.2d 236, 237 (Tex.App.—Houston [14th Dist.] 1992, no writ) (emphasis ours).

■ Under neither doctrine may it be accurately argued that a right or issue was

ever litigated or directly determined before a court of competent jurisdiction. Moreover, even if the matter had gone before a tribunal, a voluntary dismissal not touching upon a ground going to the merits of the case would not give rise to res judicata or to collateral estoppel.[7] *Cf. Baker v. Smith,* 407 S.W.2d 4, 5 (Tex.Civ.App.—Ft. Worth 1966, ref. n.r.e.).

We do not agree that the trial court lacked jurisdiction to hear the matter merely because the underlying complaint was initiated by the grievance committee. Nor are we persuaded that the State Bar may only "receive" matters alleging professional misconduct.[8] As noted heretofore, the complaint initiated by the State Bar was pending and addressed at the time the Childress complaint was dismissed.

We find no requirement in the rules that disciplinary actions must arise from information obtained from a source outside the State Bar. Moreover, we note that in *Galindo v. State, supra,* it was contemplated that a complaint might arise from a member of the committee itself. 535 S.W.2d at 926. And indeed, in *Galindo* the court stated:

> Further, it is clear that the charges were brought against defendant by the Grievance Committee itself and no one other than the Grievance Committee had accused defendant of any professional misconduct.

535 S.W.2d at 927; see also 7A C.J.S. Attorney and Client, § 93.

Points of error four and five are overruled.

We have examined all of the summary judgment evidence presented by both parties and find that the combined summary judgment proof establishes, as a matter of law, that there is no genuine issue of fact as to one or more of the essential elements of the State Bar's cause of action. The position advocated by both sides presented pure questions of law which the trial court correct-

ly determined. The judgment of the trial court is affirmed.

---

7. A "complaint" is defined as "those matters received by the State Bar...." STATE BAR RULES, Art. X, Section 2(B), now codified in TEX.GOV'T CODE ANN. tit. 2, subtit. G App. (Vernon 1988).

8. State Bar Rule Article X, Section 14(D), provides that in the event the respondent declines a proposed judgment, the committee, by filing its disciplinary petition in the district court, shall not be bound by its action or judgment. Nor may such action or judgment be admitted in evidence for any purpose.