Farrell M. SMITH, Appellant,

v.

The STATE of Texas, Appellee.

No. 911.

Court of Civil Appeals of Texas,
Corpus Christi.

April 24, 1975.

Rehearing Denied May 22, 1975.

See also Tex.Civ.App., 513 S.W.2d
949.

Gary T. Giles, Edmond J. Ford, Jr., Corpus Christi, for appellant.

Davis Grant, Gen. Counsel, State Bar of Texas, Austin, for appellee.

## OPINION

NYE, Chief Justice.

This is a disbarment action. The State of Texas, acting through the Grievance Committee for District 11–A, instituted this disbarment suit against Farrell M. Smith as defendant in the district court. The case was tried to a jury. Based on the findings of the jury, the trial court suspended Smith for the period from January 28, 1972, to September 1, 1974. Both Smith and the State of Texas have appealed from the trial court's judgment.

This suit was originally brought against Smith in January, 1972, by the Grievance Committee for the State Bar of Texas, to disbar appellant for professional misconduct because he violated the Code of Professional Responsibility and the Canons of

Ethics of the State Bar of Texas. At the first trial, based upon a unanimous jury verdict, Smith was assessed a five (5) year suspension from the practice of law, commencing on January 28, 1972. Smith appealed the trial court's judgment. This Court reversed and remanded the cause for a new trial for the reasons set forth in our Opinion. Smith v. State, 490 S.W.2d 902 (Tex.Civ.App.—Corpus Christi 1973, writ ref'd n. r. e.).

The present suit which forms the basis of this appeal was tried in January, 1974, pursuant to plaintiff's second amended original petition alleging nine (9) counts of professional misconduct for which the State of Texas sought disbarment of Smith. Subsequently, those portions of plaintiff's complaint designated as Count One, Two, Five, Six, Eight and Nine were dismissed with prejudice leaving Counts Three, Four and Seven.

Count Three charged Smith with his failure and refusal to relinquish possession of a file belonging to a former client, Mrs. Flores, and his failure and refusal to turn it over to Tom McDowell, who was her selected attorney. Count Four, the most serious of the charges, alleged that Smith advised Fred E. Hendricks, his client, to give false testimony while testifying during the taking of a deposition in connection with a certain suit styled F. E. Hendricks, et al, v. Robert J. Kubicek. Count Seven alleges Smith violated Canon 13 in bringing suit against a client for a fee, such constituting improper conduct. The jury answered thirteen special issues finding: that Smith had willfully refused to relinquish the file of Mrs. Flores to her new attorney (Count Three); that prior to the taking of Fred E. Hendricks' oral deposition in the Kubicek case, Smith, knowing of Hendricks' prior conviction, advised him to answer "No" if he were asked if he had been convicted of a felony during the taking of his deposition (Count Four); and that Smith willfully violated Canon 13 by bringing suit against Timothy H. Butler (Count Seven). The trial court rendered

judgment reprimanding Smith for his professional misconduct under Counts Three and Seven. The court ordered that Smith be suspended from the practice of law for the period from January 28, 1972, to September 1, 1974, for his conduct, as found by the jury, of advising Hendricks to answer "No" should he be asked if he had been convicted of a felony during the taking of the deposition (Count Four).

Smith has perfected his appeal in this cause and presents to us twenty-one points of error. Although the punishment phase of this disciplinary action is past, appellant apparently seeks exoneration from all counts that found him guilty of dishonorable conduct. The appellee State of Texas brings forward a single cross-point requesting that this Court reform the judgment and impose more punishment on Smith than that which was rendered by the trial court. Smith divides his argument into three different categories since each arose out of three separate transactions occurring at different times and including different parties. For this reason, we will do the same treating separately the Hendricks' Count, the Flores' Count and the Butler Count.

### THE HENDRICKS' COUNT (FOUR)

Smith in his first six points of error complains that there was no evidence or insufficient evidence to either support the submission of special issues 10 and 11 or to support the findings of the jury with respect thereto based on the sole testimony of the discredited witness, Charles W. Henderson. Special issues 10 and 11 with the jury's answers thereto read as follows:

"Do you find from a preponderance of the evidence that prior to the taking of Fred E. Hendricks' oral deposition in the Kubicek case, the Defendant, Farrell Murray Smith, knew that said Fred E. Hendricks had theretofore been convicted of a felony?

Answer 'We do' or 'We do not.'

Answer *We do.*

 * * * * * *

Do you find from a preponderance of the evidence that prior to the taking of the deposition of Fred E. Hendricks, Farrell Murray Smith advised Fred E. Hendricks to answer 'No,' should he be asked if he had been convicted of a felony during the taking of a deposition in connection with a suit styled Fred E. Hendricks et al, vs. Robert J. Kubicek, et al, Cause No. 96800–A on the docket of the 28th Judicial District, Nueces County, Texas?

Answer 'We do' or 'We do not.'

Answer: *We do.*"

█ Appellant Smith complains that the trial court erred in not disregarding the above special issue jury findings because there was no evidence to support such issues or the submission of such issues. The law requires that each special issue must be raised by the evidence. Whether an individual issue is raised by the evidence is to be determined by the application of the test that is identical with that employed in determining whether an instructed verdict should be given. 3 McDonald, Texas Civil Practice § 12.-08(c)(1970); Imperial Insurance Company v. Ellington, 498 S.W.2d 368 (Tex.Civ. App.—San Antonio 1973, no writ). It appears then that if there is any evidence of probative value to support such issues, it was the court's duty to submit the issues.

█ The evidence which goes to support the submission of special issues 10 and 11 was from witness Charles W. Henderson. Such testimony centers around a transaction between Smith, as the attorney representing Fred E. Hendricks, and Charles W. Henderson in the prosecution of a lawsuit against a former partner, Robert I. Kubicek, for an accounting of partnership property. Henderson testified that Kubicek's attorney arranged to take the deposition of Hendricks and himself at his office. Before proceeding to the deposition at Kubi-

cek's attorney's office, Smith met Henderson and Hendricks at his office. On the way to the deposition Henderson testified that Hendricks was preoccupied and worried about what he was going to say when they asked him, "Have you ever been convicted of a felony?" The following discussion took place between Smith and Hendricks on the way to the deposition:

"Q. Well, do you recall Farrell Murray Smith's answer to that inquiry on the part of Henderson?

A. His remarks about that subject were the same remarks he had always made about the subject.

Q. Had the subject been discussed before that?

A. Oh, yes, it had.

Q. All right. What were these remarks?

A. His remarks were, number one, don't worry about it, because it's not important. This is a civil matter, has nothing to do with criminal law, so you just forget about it. Number two, when we go over there and they ask you, you know, 'Have you ever been convicted of a crime?' say, no. And if they ever ask you about it again, you know, if they say, well, here it shows you did this, say well, I thought it was traffic fines, you know, you were talking about. You know, play dumb was basically the advice. But actually the impression I got was that it wasn't anything to worry about, you know, stop wasting my time on the subject.

Q. Do you recall the question being asked on the taking of the deposition of Hendricks, whether or not he had ever been convicted of a felony?

A. Yes, I do.

Q. What was his answer, if you recall?

A. His answer was no."

Henderson testified that this discussion between Smith and Hendricks had taken

place on other occasions prior to the deposition of Hendricks and that Smith gave the same answer every time: that being that this was a civil case that it had nothing to do with criminal law; not to worry about it; it's not going to come up; and that there's no way they can know about it. Henderson further testified that Smith knew at the time of the deposition that Hendricks had been convicted of a felony and that it was an established fact between the three of them (Smith, Hendricks and Henderson) that Mr. Hendricks had been convicted of a crime. Special issues numbers 10 and 11 were raised and supported by the evidence and were properly submitted by the trial court. 3 McDonald, Texas Civil Practice § 12.08(c)(1970).

■ The appellant next complains that there was insufficient evidence to support the findings of the jury with respect to these same two special issues. Smith argues that all of the evidence was ·from witness, Charles W. Henderson, who appellant says was discredited. In deciding the insufficient evidence point, we are required to consider all the evidence in the record. Garza v. Alviar, 395 S.W.2d 821 (Tex. Sup.1965). See Calvert "No Evidence" and "Insufficient Evidence" Points of Error, 38 Tex.L.Rev. 359 (1960).

Smith testified that he had no prior knowledge of Hendricks' conviction prior to the taking of the deposition nor had any such discussions taken place prior to the deposition with either Hendricks or Henderson about such conviction. Smith stated that he had never asked Hendricks to answer that question and did not know such answer was untrue or that Hendricks had been convicted of a felony. Although there appears to be conflicting evidence as to what Smith knew or did not know, and as to what Smith said or did not say, there was ample evidence to support the findings of the jury on the two specials issues 10 and 11. Garza v. Alviar, supra. See also McDonald v. New York Central Mutual Fire Insurance Company, 380 S.W.2d 545 (Tex.Sup.1964).

■ Next, appellant complains that the case should be reversed because there should be no disciplinary action taken against him based on the sole testimony of the discreú.ted witness, Charles W. Henderson. The appellant argues that Henderson was not worthy of belief and that his testimony was totally discredited by the cross examination by appellant's attorney. The appellant does not contend that Henderson was incompetent to testify but only that his credibility was questionable. It is the well established rule that the credibility of a witness presents a question for the jury even though the credibility of a witness is questionable or that his testimony was given under such circumstances as would naturally throw discredit on him. It is for the jury to determine the credibility of a witness whose testimony has been impeached. It is for the jury to determine whether a witness has been successfully impeached and what credit shall be given to his testimony. It is for the jury to determine how far ignorance or immorality is to be considered as effecting his testimony. And then, as such, the jury is the sole judge of the credibility of the witness and the weight to be given his testimony. Leyva v. Pacheco, 163 Tex. 638, 358 S.W.2d 547 (1962); Great American Insurance Company v. Murray, 437 S.W.2d 264 (Tex. Sup.1969); Western Casualty and Surety Company v. Gonzales, 518 S.W.2d 524 (Tex.1975); Rosenblum v. Bloom, 492 S. W.2d 321 (Tex.Civ.App.—Waco 1973, writ ref'd n. r. e.); 88 C.J.S. Trial § 214.

■ The appellant argues at length that the State's burden in the Hendricks' Count was to prove by a preponderance of the evidence the elements of subornation of perjury. Although what appellant is accused of may constitute the criminal offense of "subornation of perjury", this was not a criminal trial. The State does not have the burden of proving the criminal offense. Appellant was accused of telling a client to misstate a particular fact. Proof of such constituted professional misconduct. Professional misconduct is

grounds for disciplinary action regardless of whether the act or acts in question constituted an offense under the Penal Code of this State. See State Bar Rules, Art. 12, § 9, subd. a(2), Vernon's Tex.Rev. Civ.Stat.Ann. The question before the trial court was whether such acts constituted "professional misconduct" not whether all the elements of a criminal offense were present. The general public is protected from those who commit criminal offenses through our Penal Code. To hold that a lawyer can be disciplined only upon proof of a criminal offense would run afoul of those principals which all attorneys agree to uphold upon being admitted to the bar. The bar rules are there for a purpose. Such purpose is to prevent those acts which appellant has done. The jury chose not to believe the appellant. It is our duty to uphold the jury's verdict when supported by the evidence. Appellant's points 1 through 6 are overruled.

## THE FLORES' COUNT

 The Flores' Count concerns the willful refusal of appellant Smith to relinquish the files of a former client to her new attorney. The appellant brings forward ten (10) points of error. Included primarily in the points are "no evidence" and "insufficient evidence" points concerning the jury findings on nine (9) special issues. Additionally, the appellant complains of the Court's charge. The record actually reveals that the trial court gave Smith nearly every conceivable instruction he requested on his behalf concerning an attorney's rights to a possessory lien in Texas. Even with all of the instructions allowed by the trial court, the jury by a unanimous vote found against Smith on all nine (9) issues. The jury chose not to believe Smith and found that Smith was not

exerting or trying to exert a possessory lien but that he was willfully and wrongfully refusing to relinquish a client's documents. The jury found further that Smith knew that he had not delivered the documents to the subsequent attorney and found that Smith did not, in good faith, believe that he had a right to withhold such files until a court order was obtained by the succeeding attorney. We have carefully reviewed the entire lengthy statement of facts. The testimony at the trial below did not differ materially from the first trial herein. Even the points of error are not substantially different from those disposed of in our previous Opinion. See Smith v. State, 490 S.W.2d 902 (Tex.Civ. App.—Corpus Christi 1973, writ ref'd n. r. e.). Having carefully reconsidered all of appellant's points, we do not find any reversible error.

## THE BUTLER COUNT

 The jury found that Smith had willfully violated Canon 13 by bringing suit against Timothy Butler for a fee.[1] The evidence shows that Butler had consulted Smith's firm to establish the costs and feasibility of a divorce. The conference lasted only a few minutes. Subsequently, Butler received a statement from Smith's firm showing that there was thirty dollars ($30.00) due for professional services rendered. Butler called the attorney with whom he had consulted, a Mr. Macmanus in Smith's firm, and told him that he could not pay all of the money at one time because his wife was sick but would pay it on the next pay day. Smith then contacted Butler at his job by telephone telling him that the money was due and he would have to be paid by the end of the week. Butler stated that he did not think

---

1. Canon 13 which was repealed in December 1971, but which is applicable to the case at bar in that such acts occurred before the date of its repeal provides as follows:
 "13. Suing a Client for a Fee. Controversies with clients concerning compensation are to be avoided by the member so far as shall be compatible with his self-respect and with his right to receive reasonable recompense for his services; and lawsuits with clients shall be resorted to only to prevent injustice, imposition or fraud."

that he owed Smith anything. Approximately three (3) weeks later, Smith filed suit against Butler in justice of the peace court for the thirty dollar ($30.00) fee and one hundred dollars ($100.00) for collecting fees. We have reviewed all of the evidence in the record and it supports the jury's finding that Smith violated the Canon of Ethics which constituted professional misconduct. Appellant's point 16 is overruled.

 Appellant's last point of error was that the case should be reversed because the court overruled the defendant's motion in limine thereby allowing the attorney for the State to introduce himself as general counsel for the State Bar of Texas. We deem such introduction of Mr. Grant as proper. In any event, the appellant has not demonstrated that such introduction complained of amounted to such an error that was reasonably calculated to cause and probably did cause a rendition of an improper verdict in this case. Rule 434, Texas Rules of Civil Procedure. All of appellant's points of error have been considered and they are overruled.

The appellee-appellant State of Texas in its one point of error complain that the trial court erred in failing to enter a judgment of disbarment against appellant Smith in that the jury, by its verdict, found that appellant Smith was guilty of felonious conduct, to-wit: subornation of perjury. The State contends that the failure of the trial court to enter a judgment disbarring Smith was an abuse of discretion on the part of the trial court. The State's portion of this appeal, however, was dismissed by this Court in our order dated September 19, 1974. Our order of dismissal showed that the transcript which was tendered by the State to the Clerk of this Court was received 76 days after the State's motion for new trial was overruled by operation of law. The record was filed too late to give this Court jurisdiction of the State's appeal. We, therefore, cannot

express any opinion concerning the State's point of error in its attempted appeal.

The judgment of the trial court is, therefore, accordingly affirmed.

Affirmed.