**In re Petition for Naturalization of Richard John LONGSTAFF.**

Misc. No. 1261.
Petition No. 11248.

United States District Court,
N. D. Texas,
Dallas Division.

March 25, 1982.

Brian K. Bates, Samuel M. Tidwell, Samuel M. Tidwell & Associates, P.C., Dallas, Tex., for petitioner.

James A. Curry, Lee B. Reinfeld, United States Department of Justice Immigration and Naturalization Service, Dallas, Tex., Charles D. Cabiness, Ass't U.S. Atty., Dallas, Tex., for Government.

## MEMORANDUM OF DECISION

ESTES, District Judge.

This is a naturalization case before the Court on remand for a hearing de novo. The Court of Appeals for the Fifth Circuit affirmed the judgment of this Court entered March 9, 1979 denying Petitioner Richard John Longstaff naturalization on the ground that Petitioner had failed to

discharge his burden of proving that he "has complied with the statutory requirements, including that of establishing good moral character. 8 U.S.C. § 1427(a), (e)." However, this hearing de novo allows Petitioner an opportunity to discharge his burden.

■ Congress naturalizes aliens as an inherent attribute of sovereignty. "... [N]aturalization is a privilege accorded only to particular categories of qualified persons after they have undergone a careful screening procedure and taken the oath of allegiance in solemn judicial ceremonies. * * * Congress can also exclude aliens from the United States, and regulate the terms of their admission, by virtue of the commerce power and the inherent attributes of sovereignty." Dumbauld, *The Constitution of the United States*, 141–142 (1964).

The majority opinion by Justice Clark for the Supreme Court in *Boutilier v. Immigration and Naturalization Serv.*, 387 U.S. 118, 123–124, 87 S.Ct. 1563, 1567, 18 L.Ed.2d 661 (1967),* stated:

> ... It has long been held that Congress has plenary power to make rules for the admission of aliens and to exclude those who possess those characteristics which Congress has forbidden. See *The Chinese Exclusion Case (Chae Chan Ping v. United States)*, 130 U.S. 581, 9 S.Ct. 623, 32 L.Ed. 1068 (1889).... Congress commanded that homosexuals not be allowed to enter.

Petitioner Richard John Longstaff is a 42-year old English immigrant who has resided continuously in the United States since his entry on November 14, 1965. Petitioner is an owner of two combination clothing/hair dressing businesses in Dallas and Houston. He applied for citizenship on September 19, 1975. On January 13, 1977 he was interviewed by James C. Curry, an Immigration and Naturalization Service (INS) officer. During this interview Petitioner was asked whether he had ever had any homosexual experiences. At first Petitioner denied such, explaining in a later

preliminary examination that he did not feel Mr. Curry had the right to ask that question. Petitioner later admitted to Mr. Curry that he had had some homosexual experience. [Exhibit 1(c), Warren Examination, p. 9] In a preliminary examination with INS Examiner Kendall Warren, Petitioner refused to say how many homosexual experiences he had had in the last five years and refused to say how often or to give the details of the homosexual experiences he had had. [Ex. 1(c), pp. 11 and 10, respectively] Petitioner was asked why he failed to note his homosexual experiences as previously committed crimes in his 1975 Application to File Petition for Naturalization, and he answered to the effect that Texas law violations had nothing to do with these proceedings. [Ex. 1(c), pp. 12–13]

On remand, the trial court ordered a second preliminary examination. At this second examination before INS Examiner Lee Reinfeld, Petitioner Longstaff admitted that he was a homosexual and had been since birth. [Ex. 1, Reinfeld Examination, p. 9] Petitioner admitted to several violations of the Texas Penal Code § 21.06. [Ex. 1, p. 8] He also stated that he had committed homosexual acts before his entry into the United States. [Ex. 1, pp. 9–10] Mr. Reinfeld's recommendation filed with the court on January 28, 1982, was that the Petition be denied because Petitioner had not lawfully entered this country. Petitioner's counsel objected to consideration of the issue relating to lawful entry. In this Court's Pretrial Order of February 9, 1982, the Court instructed counsel that the pretrial order prepared by counsel should contain *inter alia* "a list of additional matters which will aid in the disposition of the proceeding." In the Pretrial Order submitted by counsel on March 8, 1982, the Government included the issue of unlawful entry. Obviously this issue was relevant and proper.

Although Petitioner admitted he had engaged in homosexual conduct before his entry into the United States in November, 1965, on his Application for Immigration

---

* Justices Douglas, Brennan and Fortas, dissenting.

Visa and Alien Registration [Exhibit 1(b) ], he answered "No" to question 3(b) which read: "Are you now or have you ever been afflicted with psychopathic personality . . .?"

Petitioner called two witnesses who testified as to his good moral character and reputation in the community. A member of the Dallas City Council and a teaching consultant testified they had known Petitioner two and four years, respectively, and that he was a person of good moral character and was as moral as the average citizen in Dallas and that Petitioner's homosexuality did not change their opinion.

■ Petitioner has not met his burden of proof that he has been lawfully admitted for permanent residence. 8 U.S.C. § 1427(a).

"... [N]o person shall be naturalized *unless* he has been *lawfully admitted to the United States*, for permanent residence in accordance with all applicable provisions of this chapter. The burden of proof shall be upon such person to show that he entered the United States lawfully...."
8 U.S.C. § 1429 (Emphasis supplied)

8 U.S.C. § 1182(a) provides that: "... the following classes of aliens shall be ineligible to receive visas and shall be excluded from admission into the United States." Paragraph (4) of § 1182(a) designates as such a class "aliens afflicted with psychopathic personality, or sexual deviation, ..." In 1965, at the time of Petitioner's entry, the class was designated simply as "aliens afflicted with psychopathic personality." The term "psychopathic personality" includes homosexuals and did so in 1965 when Petitioner entered the country. *Boutilier v. Immigration and Naturalization Serv., supra*, affirming Judge Kaufman's opinion, 363 F.2d 488 (2 Cir. 1966). Judge Kaufman's opinion states: "... [T]he clear design of Congress was to exclude homosexuals from entry into the country and this it

has done in section 212(a)(4) [8 U.S.C. § 1182(a)(4) ] by the use of the words 'psychopathic personality.' " *Id.*, pp. 495–496. "... Congress utilized the phrase 'psychopathic personality' not as a medical or psychiatric formulation but as a legal term of art designed to preclude the admission of homosexual aliens into the United States." *Id.*, p. 494. In affirming that opinion the Supreme Court added: "... Congress commanded that homosexuals not be allowed to enter." *Boutilier, supra*, 387 U.S. 118, 124, 87 S.Ct. 1563, 1567, 18 L.Ed.2d 661. Here, as in *Boutilier*, the Petitioner was afflicted with psychopathic personality a long period of time prior to his entry into the United States.

Petitioner falls not only into the category of excludable aliens with psychopathic personality under § 1182(a)(4) but also under § 1182(a)(9) because Petitioner committed sodomy in England before his entry, and sodomy has been recognized as a crime involving moral turpitude. Cf. *Velez-Lozano v. INS*, 463 F.2d 1305 (D.C.Cir.1972).

■ Petitioner's counsel argue that because he was admitted to the United States in 1965 on a visa issued by an American consul in London and examined, he should not now be denied naturalization. However, we hold that an administrative decision of the Immigration and Naturalization Service does not preclude the clear intent of Congress to exclude homosexuals and that as such Petitioner did not lawfully enter the United States. *Matter of Hill*, Board of Immigration Appeals Interim Decision # 2873 (advance sheet) (July 9, 1981). See *Boutilier v. INS, supra*, 387 U.S. 118, 120, 87 S.Ct. 1563, 1565, 18 L.Ed.2d 661 (1967).

■■ Petitioner has the burden of proving his good moral character as required by 8 U.S.C. § 1427(e). Petitioner has not met his burden due to his violations of the Texas Penal Code [1] which provides:

---

1. The case of *Nemetz v. Immigration and Naturalization Service*, 647 F.2d 432 (4 Cir. 1981) held that it was inappropriate to look at state law to determine the issue of good moral character in naturalization matters and that the

United States Constitution requires a "uniform rule of naturalization," U.S.Const. art. I, § 8, cl. 4. We do not disagree with the idea of a uniform rule. Rather, we hold the uniform

§ 21.06: Homosexual Conduct—"A person commits an offense if he engages in deviate sexual intercourse with another individual of the same sex."

§ 21.01. "Deviate sexual intercourse means any contact between any part of the genitals of one person and the mouth or anus of another person."

An offense under § 21.06 is a Class C Misdemeanor, punishable by a $200 fine. § 12.23. The Texas courts have held that the crime of homosexual conduct, § 21.06, is a crime involving moral turpitude. Such conduct is "... contrary to the accepted and customary behavior between man and man and is contrary to the rule of decency and good morals." *Smith v. State*, 490 S.W.2d 902, 907 (Tex.Civ.App.—Corpus Christi 1972, *writ ref. n. r. e.*), 523 S.W.2d 1, (Tex.Civ.App.—Corpus Christi 1975, *writ ref. n. r. e.*). The citizens of Texas have long regarded the crime of homosexual conduct or sodomy, as it is commonly and historically referred to, to be immoral. See *Pruett v. State*, 463 S.W.2d 191, 195–196 at fn. 9 (Tex.Cr.App.1970), *appeal dismissed, Pruett v. State*, 402 U.S. 902, 91 S.Ct. 1379, 28 L.Ed.2d 643 (1971), *reh. den.* 403 U.S. 912, 91 S.Ct. 1379, 28 L.Ed.2d 643 (1971). As recent as 1980 a Texas Court ruled it slanderous *per se* where the defendant referred to the appellant as a "queer" or "homosexual." *Head v. Newton*, 596 S.W.2d 209 (Tex.Civ.App.—Houston 14th

1980, no writ). Texas recognizes as slander "... [malicious] ... words imputing a criminal offense involving moral turpitude...." see *Sparkman v. Peoples Nat. Bank of Tyler*, 580 S.W.2d 868, 869 (Tex. Civ.App.—Texarkana 1979, *writ ref. n. r. e.*).

Petitioner's admission of a crime involving moral turpitude puts petitioner squarely within a category of persons who by statutory definition cannot be regarded as persons of good moral character under §§ 1427(a) and 1101(f)(3).

·§ 1101(f)(3) provides: "For purposes of this chapter—

"No person shall be regarded as, or found to be, a person of good moral character who, during the period for which good moral character is required to be established, is, or was—

"(3) a member of one ... of the classes of persons ... described in ... paragraph (9) ... of section 1182(a) ...."

§ 1182(a)(9) provides:

"Aliens who have been convicted of a crime involving moral turpitude ... or aliens who *admit having committed such a crime ....*" [Emphasis supplied][2]

The Court finds fault in still another aspect of Petitioner's character. Petitioner exhibited on several occasions before the INS and the Court a lack of candor.[3] Only

---

is, as prescribed in 8 U.S.C. § 1427(a), that of "good moral character."

**2.** *Ramirez v. INS*, 413 F.2d 405 (D.C.Cir.1969), *cert. den.*, 396 U.S. 929, 90 S.Ct. 264, 24 L.Ed.2d 226 (1969), upheld moral turpitude statute, 8 U.S.C. § 1182(a)(9), as not being void for vagueness.

**3.** (a) Petitioner stated in his Application to File Petition for Naturalization that he had never committed a crime for which he had not been arrested. [Ex. 1(a), p. 2, Ques. 6(a); Ex. 1(c), p. 8]

(b) When interviewed by INS Examiner James Curry, Petitioner at first denied having had homosexual experiences; but, later, answered Curry by saying he had had some experience. [Ex. 1(c), pp. 9, 10]

(c) In the interview with INS Examiner Kendall Warren, Petitioner was asked when was the first time he had had a homosexual experi-

ence, and Petitioner said he didn't know. [Exhibit 1(c), pp. 9, 10]

(d) During Mr. Warren's preliminary examination, several questions were put to Petitioner regarding the frequency of his homosexual conduct, and Petitioner refused to answer. [Exhibit 1(c), pp. 10–12]

(e) Petitioner knew of the Texas criminal statute § 21.06, proscribing homosexual conduct and acknowledged such in a letter to Congressman Jim Maddox. [Ex. 1(c), pp. 11–12; Ex. 1, p. 4]

(f) However, Petitioner, in the Warren examination, was unwilling to explain why his actions were not a violation of the Texas law. [Ex. 1(c), pp. 13–16]

(g) Nor was Petitioner willing to explain his conduct before the Court, prefacing his testimony with the statement, "I didn't want it to come out." "I don't think anyone really has the right to ask these kinds of questions ..." Petitioner was evasive about whether his ho-

after Petitioner had lost his case on appeal and returned to this court a second time did he decide to be forthright about his homosexual conduct, a subject in which the United States of America and this court certainly have an interest.

"Acquisition of American citizenship is a solemn affair. Full and truthful response to all relevant questions required by the naturalization ·procedure is, of course, to be exacted, and temporizing with the truth must be vigorously discouraged. Failure to give frank, honest, and unequivocal answers to the court when one seeks naturalization is a serious matter. Complete replies are essential so that the qualifications of the applicant or his lack of them may be ascertained. Suppressed or concealed facts, if known, might in and of themselves justify denial of citizenship." *Chaunt v. United States*, 364 U.S. 350, 352–353, 81 S.Ct. 147, 149, 5 L.Ed.2d 120 (1960).

In conclusion, it is clear that Petitioner Longstaff was not lawfully admitted into the United States and that he has not sustained his burden of proving that he was a person of good moral character; and his Petition for Naturalization should be and it is hereby DENIED.

mosexual acts had occurred outside of Texas. [Tr. Mar. 9, 1979 Hearing, pp. 11–14.]

(h) After Petitioner's appeal to the Fifth Circuit, after affirmance, and upon remand of this case, Petitioner in a second examination before the INS, still failed to respond with regard to his answer to Question # 6 on his Application to File Petition for Naturalization. Rather, Petitioner's attorney, in a structured response, testified that since Petitioner had become familiar with the exact wording of the Texas statute, he would now answer "yes" to the question of whether he had ever committed a crime for which he had not been arrested." [Ex. 1, p. 4]

(i) Petitioner admitted to INS Examiner Lee Reinfeld that he was in violation of § 21.06 of the Texas Penal Code. [Ex. 1, pp. 3–5, 8]