

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

## NOS. AP-76,998 & AP-76,999

### In re PATRICK McCANN et al.

**ON PETITIONS FOR WRITS OF MANDAMUS AND PROHIBITION
AGAINST THE HONORABLE BRADY ELLIOTT
IN CAUSE NO. 10-DCR-54,233 IN THE 268TH DISTRICT COURT
OF FORT BEND COUNTY**

HERVEY, J., delivered the opinion of the Court in which KELLER, P.J., MEYERS, JOHNSON, KEASLER, COCHRAN, and ALCALA, JJ., joined. PRICE, J., filed a dissenting opinion. WOMACK, J., dissented.

## O P I N I O N

Relator, Patrick McCann, seeks writs of mandamus to overturn orders of the trial court directing him to relinquish his former client's trial file to successor counsel and holding him in contempt for his failure to do so. He also seeks a writ of prohibition to disallow the trial court from enforcing its order compelling him to turn the file over. We will conditionally grant Relator relief on his petition for writs of mandamus and dismiss his petition for a writ of prohibition.

## I. BACKGROUND

Albert James Turner was charged with capital murder. At trial, he was represented by Patrick McCann and Tyrone Moncriffe. In June 2011, Turner was found guilty and sentenced to death. The trial court appointed counsel for Turner's direct appeal and the Office of Capital Writs ("OCW") to handle Turner's postconviction writ. As part of its investigation, OCW asked Turner to authorize the release of his trial file from McCann. Turner refused to sign the release because OCW is a "state agency,"[1] and he wanted to speak with his sister before moving forward. Lacking Turner's authorization, McCann refused to release the file believing that his client was invoking his right to keep his privileged information confidential.

In response, OCW filed a motion asking the trial court to order McCann to turn the file over. After a hearing,[2] the trial court ordered trial counsel to relinquish Turner's trial file, and McCann refused. He then filed a motion in this Court for leave to file petitions for writs of mandamus and prohibition. While McCann's motion was pending, OCW successfully withdrew as Turner's habeas counsel. Subsequently, we dismissed McCann's

[1]Based on the record, Turner's concern about OCW was that its employees are not paid by a political subdivision (usually counties), as are indigent-defense attorneys. He was skeptical of lawyers from OCW representing him because they are employed and paid by the State of Texas.

[2]At the hearing on whether Turner would sign the release, OCW asked Turner if it would make a difference if he were represented by someone unaffiliated with the State, and Turner responded that "[i]t just depends on, you know, the relationship. That would make a difference, yes, but that still wouldn't make my decision up for me." He also emphasized his need to speak with his sister, who he believed was looking for an attorney to handle Turner's postconviction writ application.

motion as moot because OCW, a "state agency," no longer represented Turner. *McCann v. Elliot*, Nos. WR-76,984-01, WR-76,984-02, 2012 WL 752612 (Tex. Crim. App. Mar. 7, 2012) (per curiam) (not designated for publication).

The trial court then appointed new habeas counsel, James Rytting, to represent Turner in his postconviction application,[3] and Rytting, like OCW, sought Turner's trial file for investigatory purposes. Rytting stated that he visited Turner twice in person after his appointment, and he agreed that McCann's characterization of Turner was correct in that Turner did not want the file turned over.[4] Rytting also explained that, based on his visits with Turner, if McCann gave the file to Turner, Rytting would never see it. For his part, McCann continued to refuse to relinquish the trial file based on his understanding of his client's wishes.[5] In a second hearing, the trial court ordered McCann to turn over his

---

[3]Initially, the trial court appointed John E. Wright, but he declined the appointment due to his employment at the Regional Public Defenders for Capital Cases in Lubbock.

[4]According to an affidavit signed by Rytting on February 6, 2013, Rytting had visited Turner in person at the Polunsky Unit twice and had attempted to meet him on other occasions. He also stated that Turner accepted file-release forms from him, and Turner told Rytting that he would think about executing them.

[5]McCann's understanding of Turner's wishes stem from three separate incidents. The first incident was sometime before the hearing with OCW and McCann. At that time, McCann was discussing appellate counsel with his client when, according to McCann, Turner allegedly said, "I don't trust any of y'all. I don't want you to give them anything unless I approve it. My sister's going to hire me a lawyer. You keep the file until I tell you otherwise."
Later, Turner testified at the OCW–McCann hearing, and he stated that he would not sign the release, but he also indicated that he might be willing to sign it in the future. McCann took this as a continued refusal to turn the file over, while the trial judge was of the opinion that Turner was not refusing or agreeing to turn the file over.
Finally, according to McCann, OCW asked him to write a letter to Turner about turning the file over, but whether this was before or after the hearing in which Turner testified is unclear.

file again. After failing to comply with the trial court's second order, the court found McCann in contempt.

On January 7, 2013, this Court granted a Motion for Emergency Relief staying enforcement of the trial court's orders to turn over the file and finding McCann in contempt. *In re McCann*, No. WR-76,984-01 (Tex. Crim. App. Jan. 7, 2013) (per curiam) (not designated for publication). We then filed and set the petitions and ordered the parties to brief the following three issues:

> 1. To whom does a client's physical file belong?
>
> 2. If the file belongs to the client (the defendant in the underlying case here), what are the possible consequences should the client refuse to turn over the file to subsequent counsel?
>
> 3. If the file belongs to the client and the client is unable or unwilling to decide whether to turn over the file, to whom does that decision fall (*e.g.* former counsel, subsequent counsel, trial judge, or guardian appointed for that issue)?

*In re McCann*, Nos. AP-76,998 & AP-76,999, 2013 WL 1149840, at *1 (Tex. Crim. App. Mar. 20, 2013) (per curiam) (not designated for publication). The Court received Rytting's court-ordered brief on April 19, 2013. McCann never submitted a brief on the merits, and the State Bar of Texas filed an amicus brief.

## II. WRITS OF MANDAMUS AND PROHIBITION

Mandamus relief may be granted if a relator shows that: (1) the act sought to be compelled is purely ministerial, and (2) there is no adequate remedy at law. *In re State ex*

---

Nonetheless, McCann wrote the letter, but he stated that he never received a reply.

*rel. Weeks*, 391 S.W.3d 117, 121–22 (Tex. Crim. App. 2013). With respect to the requirement that the act sought is purely ministerial, the relator must have a "clear right to the relief sought," meaning that the merits of the relief sought are "beyond dispute." *See Winters v. Presiding Judge of Criminal Dist. Court No. Three of Tarrant Cnty.*, 118 S.W.3d 773, 775–76 (Tex. Crim. App. 2003). To show "a clear right to the relief sought," a relator must show that the facts and circumstances of the case "dictate but one rational decision 'under unequivocal, well-settled . . . and clearly controlling legal principles.'" *Weeks*, 391 S.W.3d at 122. However, we have also noted that, although an issue may be one of first impression, it does not necessarily follow that the law is not well-settled. *Id.* It is a small step then to hold that, this Court may grant relief in a mandamus case based on a well-settled, but rarely litigated point of law. *See id.* Regarding the requirement of an adequate remedy at law, we have held that even if a relator has a remedy at law, that relator can show that no *adequate* legal remedy exists at law if the remedy is "so uncertain, tedious, burdensome, slow, inconvenient, inappropriate, or ineffective as to be deemed inadequate" *Id.* (quoting *Greenwell v. Court of Appeals for the Thirteenth Judicial Dist.*, 159 S.W.3d 645, 648–49 (Tex. Crim. App. 2005)).

Similarly, prohibition relief is available only if the relator shows that he has a clear right to the relief sought and no other adequate legal remedy is available. *See State ex rel. Lykos v. Fine*, 330 S.W.3d 904, 907 (Tex. Crim. App. 2011). In an ordinary case, a petition for writ of mandamus "should first be presented to a court of appeals unless there

is a compelling reason not to do so." *Padilla v. McDaniel*, 122 S.W.3d 805, 807–08 (Tex. Crim. App. 2003) (per curiam) (citing TEX. R. APP. P. 52.3(e)). However, the mandamus action was properly filed directly in this Court because this is a capital-murder case in which the death penalty was assessed. *See Padilla*, 122 S.W.3d at 806–07.

### III. DISCUSSION

To whom does a client's file belong? The client's file belongs to the client.[6] In 1918, the Texas Supreme Court recognized explicitly that an attorney is an agent of his client and implicitly that a client owns the contents of his or her file. *See Thomson v. Findlater Hardware Co.*, 109 Tex. 235, 237, 205 S.W. 831, 832 (Tex. 1918). Later, we expressly reaffirmed that a client owns the contents of his or her file.[7] *See Burnett v.*

---

[6]There is a split among courts that have considered this question. *See generally* Brian J. Slovut, Note, *Eliminating Conflict at the Termination of the Attorney-Client Relationship: A Proposed Standard Governing Property Rights in the Client's File*, 76 MINN. L. REV. 1483 (1992). Many jurisdictions follow the entire-file standard. That is, the client owns all of the documents within the client's file. Thus, a lawyer must relinquish the entire contents of the client's file upon request (assuming that there is no valid attorney lien). On the other hand, other jurisdictions follow the end-product standard that divides ownership between the client and the attorney. *Id.* at 1485.

[7]In *Burnett*, the appellant, on direct appeal from her death sentence, argued that the trial court erred when it admitted into evidence a recorded pre-hypnotic interview between the appellant and a hypnotist hired by her attorneys. *Burnett*, 642 S.W.2d at 766–67. Before resolving the second question presented for our review—whether the attorney-client privilege prevented the admission of the tape into evidence—we first resolved the question of who owned the physical tape. In our analysis, we noted that the parties made "various characterizations" of the recording, including that the admission of the tape violated the appellant's attorney-client privilege, the work product of counsel, or the property rights of the hypnotist. However, we held that the recording, "as with deeds, notes, vouchers, documents and papers of a client," belong to the client. We reached this holding due to the hypnotist's agency relationship with the appellant's attorneys who were in turn the appellant's agents. We also held that admission of the tape was error because the attorney-client privilege applied to exclude the tape from evidence. *Id.* at

*State*, 642 S.W.2d 765, 769, n.10 (Tex. Crim. App. 1983) (citing *Thomson*, 205 S.W. at 832) ("[W]hen all is said and done, the tape recording, as with deeds, notes, vouchers, documents and papers of a client, is the property of [the client]"). Neither McCann nor the State has referred to our holding in *Burnett*, but the amicus curiae brief filed by the State Bar of Texas cites *Burnett* for the true, but inapplicable, proposition that the right to claim or waive the attorney-client privilege belongs to the client, his guardian, or his conservator. Amended Brief of Amicus Curiae State Bar of Texas, Nos. AP-76,998 & AP-76,999, at 6–7; *see Burnett*, 642 S.W.2d at 770. Today we reaffirm that a client owns the contents of his or her file. Rytting advances a bevy of arguments as to why a client's file, or part of a client's file, does not belong to the client, and to support his arguments, he cites a number of sources. However, as we explain, each of Rytting's arguments is unpersuasive.[8]

---

769–70. However, because Turner's file has not been offered into evidence in this case, as the pre-hypnotic tape was in *Burnett*, today we need not address the privilege issue because it is not ripe for our review.

[8]*See, e.g.*, *In re George*, 28 S.W.3d 511, 516 (Tex. 2000) (citing TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 1.15) (noting that "[t]he attorney is the agent of the client, and the work product generated by the attorney in representing the client belongs to the client"); *Resolution Trust Corp. v. H----, P.C.*, 128 F.R.D. 647, 648 (N.D. Tex. 1989) (mem. op.) (holding that, under Texas law, the entire contents of a client's file belong to the client and the argument that "only another lawyer can be trusted with the file . . . . cannot be taken seriously . . . ." because that practice "is contrary to the fiduciary and agency nature of the relationship between a client and an attorney."); TEX. DISCIPLINARY RULES PROF'L CONDUCT; RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS (2000); GUIDELINES AND STANDARDS FOR TEXAS CAPITAL COUNSEL (State Bar of Tex. 2006); GUIDELINES FOR THE APPOINTMENT AND PERFORMANCE OF DEFENSE COUNSEL IN DEATH PENALTY CASES (2003); TEX. COMM. ON PROF'L ETHICS, Ops. 395 (1979) (noting that an attorney who refuses to turn over a client's file is at risk of liability, even if asserting an attorney lien, because that attorney's actions may subsequently be deemed unethical

First, Rytting argues that Texas Disciplinary Rule of Professional Conduct 1.15(d)[9] limits a client's interest in his or her own file to a possessory right to demand a copy of the file, and even that right is qualified, he asserts, because an attorney is allowed to withhold a client's papers to enforce payment of fees in the form of an attorney lien. TEX. DISCIPLINARY RULES PROF'L CONDUCT R.1.15(d), *reprinted in* TEX. GOV'T CODE, tit. 2, subtit. G, app. A (Tex. State Bar R. art. X, § 9). These arguments—that the client has a limited possessory interest in his or her own file and that the attorney-lien language of the Disciplinary Rules creates a property right in favor of the attorney—are not persuasive. First, Rule 1.15(d) of the Texas Disciplinary Rules of Professional Conduct speaks to only "papers and property to which the client is entitled . . . [,]" and it contemplates the

---

and sanctionable), 411 (1984) (same), 570 (2006) ("A lawyer must, upon request, provide to a former client the notes of the lawyer from the lawyer's file for that former client except when the lawyer has the right to withhold the notes pursuant to a legal right such as a lawyer's lien, when the lawyer is required to withhold the lawyer's notes (or portions thereof) by court order, or when not withholding the notes (or portions thereof) would violate a duty owed to a third person or risk causing serious harm to the client."); *see also Smith v. State*, 523 S.W.2d 1, 6 (Tex. Civ. App.—Corpus Christi 1975, writ ref'd n.r.e.) (sustaining disciplinary sanctions when an attorney claimed to assert an attorney lien in good faith on certain client files but was subsequently found by a unanimous jury to have withheld the file in bad faith).

[9]Section (d) of Rule 1.15 states,

Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payments of fee that has not been earned. The lawyer may retain papers relating to the client to the extent permitted by other law if such retention will not prejudice the client in the subject matter of the representation.

TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 1.15(d).

retention of client papers only in the case of a valid attorney lien, which has not been asserted here. Second, Rytting's attorney-lien argument is a red herring and actually supports Relator's position. The language of Rule 1.15(d) allows an attorney to retain papers "relating to the client" as allowed by law, if such retention does not prejudice the client in the subject matter of the representation. *Id.* The language of the rule does not designate the owner of the "papers relating to the client"; rather it allows an attorney to assert an attorney lien on those papers. A lien is a "legal right or interest that a creditor has *in another's property*" that usually lasts "until a debt or duty that it secures is satisfied." BLACK'S LAW DICTIONARY 933 (7th ed. 1999) (emphasis added). Thus, a lien, by its definition, is a transitory interest in someone else's property and, therefore, the attorney asserting such a lien never owns the property at issue, the client owns the file by implication (if the attorney does not), and Rytting's arguments must fail.[10]   Next, Rytting eschews property-right arguments in favor of asserting that ethical and professional duties require a trial attorney to retain *a copy* of the trial file for the benefit of subsequent counsel in a death-penalty case.[11] Specifically, Rytting cites Guideline 11.8 of the State

[10]We also note that, to perfect an attorney lien, the attorney must possess the papers he or she purports to have a lien on to receive payment for services rendered. *See Thomson*, 205 S.W. at 832 (holding that, to perfect an attorney lien, there are two requirements: (1) the property must actually be in the possession of the attorney, and (2) the property must have come into the possession of the attorney in his or her character as an attorney at law). However, this case has been brought specifically to prevent Rytting from obtaining Turner's trial file; thus, it is impossible for Rytting to perfect an attorney lien under these facts.

[11]We address Rytting's argument only to the extent that it would require trial counsel to keep a copy of a client's file for the future use of successor counsel despite the client's wishes to

Bar of Texas's Guidelines and Standards for Texas Capital Counsel and Guideline 10.13

of the American Bar Association's Guide for the Appointment and Performance of

Defense Counsel in Death Penalty Cases. The two guidelines are substantially similar.[12]

*Compare* GUIDELINES AND STANDARDS FOR TEXAS CAPITAL COUNSEL 11.8 (State Bar of

Tex. 2006), *with* ABA GUIDELINES FOR THE APPOINTMENT AND PERFORMANCE OF

DEFENSE COUNSEL IN DEATH PENALTY CASES 10.13 (2003). Rytting, however, neglects

to cite Guideline 12.1(F) of the Texas guidelines expressly limiting the ability of trial

counsel to turn over a client's file to successor counsel without the consent of the client.[13]

Nonetheless, both guidelines are only persuasive authority, and they are designed to

safeguard a criminal-defendant's interests, not a successor counsel's "right" to force trial

---

the contrary.

[12]According to these guidelines, the duty to facilitate the work of successor counsel includes (1) maintaining the records of the case in a manner that will inform successor counsel of all significant developments relevant to the litigation, (2) providing the client's file, as well as information regarding all aspects of the representation, to successor counsel, (3) sharing potential further areas of legal and factual research with successor counsel, and (4) cooperating with such professionally appropriate legal strategies as may be chosen by successor counsel.

[13]Section F of Guideline 12.1, "Duties of Trial Counsel After Conviction[,]" states the following:

> Trial counsel should cooperate with successor direct appeal, habeas and clemency counsel in providing relevant information to successor counsel, including trial counsel's prior representation files *upon the client's consent*, in order to maintain continuity of representation, and to assist future counsel in presentation of issues relevant to subsequent litigation efforts.

GUIDELINES AND STANDARDS FOR TEXAS CAPITAL COUNSEL 12.1(F) (State Bar of Tex. 2006) (emphasis added).

counsel to retain, and turn over, a client's file (or a copy) against the client's wishes.

Thus, if the client makes a voluntary decision not to turn over his or her file, a client's

former counsel is obligated to refuse to provide a copy of the client's file to facilitate the

work of successor counsel. This is because the agent (the client's former attorney) may

not relinquish dominion and control of the principal's property without the principal's

permission absent circumstances inapplicable in this case (e.g., an attorney lien,

incompetency).[14] This is true even if the client decides, against his or her best interests,

---

[14]RESTATEMENT (THIRD) OF AGENCY § 8.09 ("An agent has a duty to comply with all lawful instructions received from the principal and persons designated by the principal concerning the agent's actions on behalf of the principal."); *see Gen. Motors Acceptance Corp./Crenshaw, Dupree & Milam, L.L.P. v. Crenshaw, Dupree & Milam, L.L.P./General Motors Acceptance Corp.*, 986 S.W.2d 632, 636 (Tex. App.—El Paso 1998, pet ref'd) (citing *Cooper v. Lee*, 12 S.W. 483, 486 (Tex. 1889)) (holding that a "fiduciary relationship exists between attorneys and clients as a matter of law" and that "an agent must obey the lawful directions of its principal").
　　While McCann's obligation not to relinquish Turner's trial file may have also stemmed from his duty of confidentiality under the disciplinary rules, there is a more fundamental reason why McCann was obligated not to release Turner's trial file: because Turner owns the contents of his file, and the trial court attempted to require McCann to violate the instructions of his client and principal to whom he has a fiduciary duty. *See In re George*, 28 S.W.3d at 516 (characterizing the attorney-client relationship as one of principal and agent); *Resolution Trust Corp.*, 128 F.R.D. at 648 (stating that the argument that "only another lawyer can be trusted with the file . . . . cannot be taken seriously . . . ." because that practice "is contrary to the fiduciary and agency nature of the relationship between a client and an attorney"); *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 199–00 (Tex. 2002) ("Our courts have long recognized that certain fiduciary duties are owed by . . . an attorney to a client.") (footnotes omitted); *see also* RESTATEMENT (THIRD) OF AGENCY §§ 8.01, 8.05 (characterizing the principal–agent relationship as a fiduciary one, and stating that an agent specifically "has a duty (1) not to use property of the principal for the agent's own purposes or those of a third party; and (2) not to use or communicate confidential information of the principal for the agent's own purposes or those of a third party"); TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 1.5 & cmt. (the comment states, in part, that "[b]oth the fiduciary relationship existing between lawyer and client and the proper functioning of the legal system require the preservation by the lawyer of confidential information of one who has employed . . . the lawyer"). The outcome in this case may have been different if Turner had been found incompetent (a question we do not answer today) and if, during the period

not to relinquish the trial file to subsequent counsel because a legally competent client can define his or her own best interests, and that decision will control.[15] Finally, Rytting argues that if a client is unable or unwilling to decide if it is in his or her best interest to release the trial file to successor counsel, then that decision lies with successor counsel as the "current attorney" for the client and not former counsel or a guardian. However, the authorities cited by Rytting regarding attorney-client privilege are inapposite because, as we have explained, property rights control the outcome of this question, not privilege law or the Texas Disciplinary Rules of Professional Conduct.[16]

If an attorney has no reason to believe that his or her client is legally incompetent,

---

of his incompetency, a guardian was appointed to make decisions in Turner's best interest, including turning over his trial file to successor counsel despite Turner's protestations to the contrary.

[15]This comports with the agency entire-file approach followed in Texas (i.e., all of the contents of a client's file belong to the client). *See supra* note 6. Also, an attorney is required to vigorously advocate for his or her client's best interests, which can be defined by the client, although that attorney may believe that his or her strategy will result in a better outcome for the client. However, a client's ability to define his or her own best interests may end when an attorney's duty under Rule 1.02(g) of the Texas Disciplinary Rules of Professional Conduct begins—when an attorney reasonably believes that the client's ability to make decisions in his or her best interest is compromised, the appointment of a guardian should be sought.

[16]For example, the relevant passage from the Restatement (Third) on the Law Governing Lawyers states, "If a former lawyer with whom the client made a privileged exchange and a lawyer now representing the client disagree on whether to assert the privilege, as between them the current lawyer-agent determines whether to assert or waive the privilege." RESTATEMENT (THIRD) ON THE LAW GOVERNING LAWYERS § 86, rpt. cmt. c (2003). The quoted passage merely contemplates who should prevail in a disagreement between a client's former and current attorney. It does not state that a client's current attorney can assert the privilege against the client's objections. Rytting also cites Weinstein's Federal Evidence and Federal Practice and Procedure for the same proposition, but as we have explained, that proposition is not persuasive under these circumstances.

the client's decision not to release his or her trial file is unassailable. However, if the attorney "reasonably believes that the client lacks legal competence[,]" then the attorney "shall take reasonable action to secure the appointment of a guardian or other legal representative . . . ."[17] TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 1.02(g). If a guardian or other legal representative has already been appointed, the client's attorney "should ordinarily look to that representative for decisions on behalf of the client." *Id.* at 1.02(g) cmts. 12 & 13. Nevertheless, an attorney can seek to have an appointed guardian replaced if he or she is not acting in the best interest of the client. *See Urbish v. 127th Judicial Dist. Ct.*, 708 S.W.2d 429, 431–32 (Tex. 1986) (orig. proceeding) (holding that, when considering only the ward's best interests, a trial court can replace a guardian if it

---

[17]Although competency has not been directly raised in this proceeding, the competency of Turner was raised numerous times by McCann at trial. At the January 4, hearing regarding turning over of the file, the following exchange took place:

> [RYTTING]: So you don't believe Mr. Turner has made an intelligent decision about turning over the files, therefore authorizing me to get your files?
>
> [McCANN]: I'm not a psychologist. I did my best to sit there and bring forth the fact that I believe that he suffers from something that prevents him from making capable decisions, but that was not the decision of the Court, and in fairness to the Court, during the hearings we had, the psychological testimony, although voluminous, was fairly gray on several topics because [Turner] refused to talk to the psychologist that we sent to him, including Dr. Almeida.

Later in the same hearing, McCann testified that "I'm placed in a catch-22. I have a client who's invoking the privilege, who is still legally competent, and I can't turn that over, even in the face of a court order . . . ." Rytting asked McCann what his basis was for concluding that Turner is currently legally competent, and McCann responded that "the Court has found him competent. Given that, his invocation of privilege is proper." We agree that McCann is in a precarious position given that Turner, thus far, has been ruled competent and refuses to release his trial file.

determines that the guardian has an adverse interest to the ward; the decision of the trial court is reviewed for an abuse of discretion). Thus, Rytting's argument that successor counsel's decision regarding his or her client's file prevails over all other claims, including those of his competent client or the client's guardian (if applicable) is unsupportable and an incorrect statement of the law.

In this case, the conflict is between Turner's trial and postconviction attorneys. McCann, Turner's trial attorney, has declined to turn over the file based on his understanding that his former client wants him to hold the file until otherwise directed. Rytting, Turner's postconviction attorney, seeks to force McCann to turn over the file because he believes that it is in his client's best interests. Both attorneys have obligations under the Texas Disciplinary Rules of Professional Conduct: McCann is obliged to honor his former client's wishes not to reveal privileged information, and Rytting seeks to overturn his appointed client's sentence of death in postconviction proceedings but is being prevented by his own client from effectively doing so.[18] McCann, however, has an additional burden based on the binding precedent of this Court under *Burnett*, and as the agent and holder of his principal's trial file, to follow the wishes of his principal in disposing or retaining the property as the principal directs.[19] Assuming Turner is legally

---

[18]In an affidavit authored by Rytting, he agreed that Turner would not relinquish his trial file, and the record shows that Turner refused to sign the release (i.e., the functional equivalent of refusing to turn over the file). Unless Turner signs the release or a guardian is appointed, Rytting is bound by Turner's decision, or indecision, as the case may be.

[19]*See supra* note 14.

competent (as the trial court found in this case), he is entitled to choose not to turn over his trial file; and McCann, as Turner's former counsel and agent, must honor that decision for the reasons that we have explained. If, however, McCann, Rytting, or another interested party with standing believes that Turner is legally incompetent, that person can seek to have a guardian appointed.

Although the trial judge rejected repeated motions by McCann to have Turner declared incompetent pretrial and at trial, it may be in the client's best interests for Rytting to also attempt to have a guardian appointed. But we acknowledge that, before the appointment of a guardian is warranted, a defendant must do more than simply misbehave; he or she must be proven legally incompetent by a preponderance of the evidence.[20] *See* TEX. CODE CRIM. PROC. art. 46B.003(b). Moreover, the trial judge is correct that certain deadlines have been triggered in this death-penalty case that cause Turner's decision to severely damage his chances of success in postconviction

---

[20]While we are sympathetic to the plight of Rytting as the postconviction attorney for a client who refuses to assist his own attorney, we decline to abdicate our duty under our mandamus jurisprudence by allowing a trial court to "save" a capital defendant from his "own manifest paranoias" when a trial court has found the defendant competent, and the defendant chooses not to release his trial file. *See* Dissenting Op. at 18. Moreover, it is entirely unclear how this Court could justify creating, or applying, an unheard of and totally unsupported exception to our mandamus jurisprudence allowing a trial court in a capital case to "save" a defendant who suffers from "his own manifest paranoias." Furthermore, there is no clear limiting principle for such an exception. For example, would this exception properly apply to only mandamus proceedings, only cases in which the death penalty was assessed, or all cases in which a defendant suffers from his or her own manifest paranoias but is not incompetent? Also, it is not clear who would determine whether a defendant suffers from "manifest paranoias" or what the standard of review for such a conclusion would be.

proceedings,[21] but if Turner is competent to stand trial, then his choice to undermine the ability of his postconviction attorney to represent him effectively may be a poor one, but it is one the law allows him to make.

### IV. RELATOR IS ENTITLED TO RELIEF

Here, Turner is statutorily presumed competent, and he has expressly been found competent by the trial court. Moreover, his last instructions to McCann were not to release his trial file unless directed to do so. After Turner told McCann to not release his trial file, he declined repeatedly to sign a release authorizing his trial file to be turned over to his appointed postconviction counsel despite his knowledge of the consequences of such an action.

Therefore, in light of this opinion—a client owns his or her trial file and a former attorney is obligated to follow his or her former client's last known wishes under these circumstances—McCann should not turn over his former client's file, Judge Elliott did not have the authority (inherent or otherwise) to order McCann to violate his fiduciary

---

[21]In a death-penalty case, appellate timelines are of the utmost importance for at least two reasons. First, when the death penalty is assessed, a criminal defendant's interest in zealous representation is at its peak. Second, filing deadlines in capital felony cases are different than in other cases. The Texas Constitution and the Texas Code of Criminal Procedure state that capital cases in which the death penalty is assessed are appealed directly to the Court of Criminal Appeals. TEX. CONST. art. V, § 5(b); TEX. CODE CRIM. PROC. art. 37.071(h). In addition, Section 4(a) of Article 11.071 of the Texas Code of Criminal Procedure states that an application for a writ of habeas corpus must be filed "not later than the 180th day after the date the convicting court appoints counsel . . . or not later than the 45th day after the date the state's original brief is filed on direct appeal with the court of criminal appeals, whichever date is later." TEX. CODE CRIM. PROC. art. 11.071, § 4(a) (dealing with applications for writs of habeas corpus in capital cases in which the death penalty was assessed).

duty to Turner,[22] and Judge Elliott did not have the authority to enforce that order by holding McCann in contempt for failing to relinquish the file. Moreover, McCann has no adequate remedy at law because, although McCann could seek relief from the order of contempt through an application for writ of habeas corpus,[23] that relief would not resolve the underlying issue of the trial judge's order compelling McCann to relinquish Turner's trial file. In addition, Rytting points to no constitutional provision, statute, or caselaw, nor are we aware of any, that allows McCann to appeal the order of the trial judge compelling him to turn over the trial file. *See Johnson v. Tenth Judicial Dist. Ct. of Appeals at Waco*, 280 S.W.3d 866, 873 (Tex. Crim. App. 2008). Thus, even if McCann has a remedy at law, it is not adequate under these circumstances.

In addition, because McCann has a clear right to relief, vacating the order of contempt and the order to relinquish Turner's trial file is a purely ministerial act.

---

[22]*See Stearnes v. Clinton*, 780 S.W.2d 216, 223 (Tex. Crim. App. 1989) (orig. proceeding) (granting conditional mandamus relief). In *Stearnes*, we held that a trial court that acts without inherent power acts without authority, and that a relator satisfies "the first prerequisite for mandamus relief" when he or she shows that a trial court acted without authority. *Id.* Furthermore, under Section 21.001 of the Texas Government Code, "[a] court has all powers necessary for the exercise of its jurisdiction and the enforcement of its lawful orders, including authority to issue the . . . orders necessary or proper in aid of its jurisdiction." TEX. GOV'T CODE § 21.001(a). Neither order issued by the trial judge in this case was issued to enforce its jurisdiction, and we have not been directed to, nor are we aware of, any inherent or explicit authority authorizing the trial court to enter such orders.

[23]*Ex parte Thompson*, 273 S.W.3d 177, 181 (Tex. Crim. App. 2008) (holding that the Court of Criminal Appeal's original jurisdiction for writs of habeas corpus under the Texas Constitution allows it to review orders of contempt entered by district courts); *see* TEX. CONST. art. V, § 5(c); 13 TEX. JUR. 3D *Contempt* § 69 (2011).

Therefore, we conditionally grant Relator relief on his petition for writs of mandamus.

We assume that the trial court will immediately comply with our order, and the writs of

mandamus will issue only in the event that the judge should refuse to do so.[24]

Hervey, J.

Delivered: November 20, 2013

Publish

---

[24]We dismiss McCann's petition for writ of prohibition. *See Weeks*, 391 S.W.3d at 126 n.43.